UNITED STATES of America,

v.

Carlton WELDEN, Edward Eugene Satterfield, Perry Don Allison.

No. CR 83–AR–123–M.

United States District Court,
N.D. Alabama.

July 29, 1983.

Charles McGee, Fort Payne, Ala., W.M. Beck, Sr., Fort Payne, Ala., Charles Caldwell, Craig R. Izard, Birmingham, Ala., for defendants.

Frank W. Donaldson, U.S. Atty., G. Douglas Jones, Asst. U.S. Atty., Birmingham, Ala., for plaintiff.

## MEMORANDUM OPINION

ACKER, District Judge.

The Court is faced with a challenge to the constitutionality of 18 U.S.C. §§ 3579 and 3580, insofar as these new statutory provisions of the Victim and Witness Protection Act of 1982 purport to require "restitution" to a "victim" by a person convicted of a federal crime. In this particular case the indictment was brought under 18 U.S.C. § 1201(a)(1), the kidnapping statute. From the evidence upon which Carlton Welden, Edward Eugene Satterfield and Perry Don Allison, the three co-defendants in this case, were all convicted it appears that as to one "victim" the crime resulted in his death; that as to a second "victim" the crime resulted in her sexual abuse, in a laceration to her head, in her hospitalization and in possible severe and permanent psychological damage; and that as to a third "victim" the crime resulted in damage to his automobile, which was used by defendants in their crime. If constitutional, 18 U.S.C. §§ 3579 and 3580, would require this Court, as part of the sentence of each defendant, to order that he make "restitution" to each "victim", or for the Court to articulate in the record a legitimate reason for not doing so. During the sentencing hearing on July 15, 1983, after the guilty verdict, each defendant filed in open court a motion claiming that these statutes, which by their terms apply to Title 18 crimes committed after January 1, 1983, are unconstitutional. The crime here was clearly committed after January 1, 1983. Therefore, the constitutional question is clearly and unavoidably presented.

The Court has declined the temptation to "side step" the constitutional question. It could do so by entering a simplistic order of restitution. On the other hand, the Court would be intellectually dishonest in the ex-

treme if it attempted to state a reason for not ordering restitution in a case where the crime is so hideous, and a case in which it appears that all defendants have assets.

### The Statutes

Before addressing the constitutional issues which have been raised by defendants, it is necessary to look at the statutes themselves.

The Victim Protection and Restitution Act of 1982 was enacted on October 12, 1982. The "restitution" portions are set forth in Title 18 U.S.C. §§ 3579 and 3580 as follows:

### § 3579. Order of restitution

(a)(1) The court, when sentencing a defendant convicted of an offense under this title or under subsection (h), (i), (j), or (n) of section 902 of the Federal Aviation Act of 1958 (49 U.S.C. 1472), may order, in addition to or in lieu of any other penalty authorized by law, that the defendant make restitution to any victim of the offense.

(2) If the court does not order restitution, or orders only partial restitution, under this section, the court shall state on the record the reasons therefor.

(b) The order may require that such defendant—

(1) in the case of an offense resulting in damage to or loss or destruction of property of a victim of the offense—

(A) return the property to the owner of the property or someone designated by the owner; or

(B) if return of the property under subparagraph (A) is impossible, impractical, or inadequate, pay an amount equal to the greater of—

(i) the value of the property on the date of the damage, loss, or destruction, or

(ii) the value of the property on the date of sentencing,

less the value (as of the date the property is returned) of any part of the property that is returned;

(2) in the case of an offense resulting in bodily injury to a victim—

(A) pay an amount equal to the cost of necessary medical and related professional services and devices relating to physical, psychiatric, and psychological care, including nonmedical care and treatment rendered in accordance with a method of healing recognized by the law of the place of treatment;

(B) pay an amount equal to the cost of necessary physical and occupational therapy and rehabilitation; and

(C) reimburse the victim for income lost by such victim as a result of such offense;

(3) in the case of an offense resulting in bodily injury also results in the death of a victim, pay an amount equal to the cost of necessary funeral and related services; and

(4) in any case, if the victim (or if the victim is deceased, the victim's estate) consents, make restitution in services in lieu of money, or make restitution to a person or organization designated by the victim or the estate.

(c) If the Court decides to order restitution under this section, the court shall, if the victim is deceased, order that the restitution be made to the victim's estate.

(d) The court shall impose an order of restitution to the extent that such order is as fair as possible to the victim and the imposition of such order will not unduly complicate or prolong the sentencing process.

(e)(1) The court shall not impose restitution with respect to a loss for which the victim has received or is to receive compensation, except that the court may, in the interest of justice, order restitution to any person who has compensated the victim for such loss to the extent that such person paid the compensation. An order of restitution shall require that all restitution to victims under such order be made before any restitution to any other person under such order is made.

(2) Any amount paid to a victim under an order of restitution shall be set off against any amount later recovered as

compensatory damages by such victim in—

    (A) any Federal civil proceeding; and

    (B) any State civil proceeding, to the extent provided by the law of that State.

(f)(1) The court may require that such defendant make restitution under this section within a specified period or in specified installments.

(2) The end of such period or the last such installment shall not be later than—

    (A) the end of the period of probation, if probation is ordered;

    (B) five years after the end of the term of imprisonment imposed, if the court does not order probation; and

    (C) five years after the date of sentencing in any other case.

(3) If not otherwise provided by the court under this subsection, restitution shall be made immediately.

(g) If such defendant is placed on probation or paroled under this title, any restitution ordered under this section shall be a condition of such probation or parole. The court may revoke probation and the Parole Commission may revoke parole if the defendant fails to comply with such order. In determining whether to revoke probation or parole, the court or Parole Commission shall consider the defendant's employment status, earning ability, financial resources, the willfulness of the defendant's failure to pay, and any other special circumstances that may have a bearing on the defendant's ability to pay.

(h) An order of restitution may be enforced by the United States or a victim named in the order to receive the restitution in the same manner as a judgment in a civil action.

**§ 3580. Procedure for issuing order of restitution**

(a) The court, in determining whether to order restitution under section 3579 of this title and the amount of such restitution, shall consider the amount of the loss sustained by any victim as a result of the offense, the financial resources of the defendant, the financial needs and earning ability of the defendant and the defendant's dependents, and such other factors as the court deems appropriate.

(b) The court may order the probation service of the court to obtain information pertaining to the factors set forth in subsection (a) of this section. The probation service of the court shall include the information collected in the report of presentence investigation or in a separate report, as the court directs.

(c) The court shall disclose to both the defendant and the attorney for the Government all portions of the presentence or other report pertaining to the matters described in subsection (a) of this section.

(d) Any dispute as to the proper amount or type of restitution shall be resolved by the court by the preponderance of the evidence. The burden of demonstrating the amount of the loss sustained by a victim as a result of the offense shall be on the attorney for the Government. The burden of demonstrating the financial resources of the defendant and the financial needs of the defendant and such defendant's dependents shall be on the defendant. The burden of demonstrating such other matters as the court deems appropriate shall be upon the party designated by the court as justice requires.

(e) A conviction of a defendant for an offense involving the act giving rise to restitution under this section shall estop the defendant from denying the essential allegations of that offense in any subsequent Federal civil proceeding or State civil proceeding, to the extent consistent with State law, brought by the victim.

Another provision of the Act, set forth in Section 6 of Pub.L. 97–291 (The Witness Protection and Restitution Act of 1982), states in pertinent part:

    Within two hundred and seventy days after the date of enactment of this Act [October 12, 1982], the Attorney General shall develop and implement guidelines for the Department of Justice consistent

with the purposes of this Act. In preparing the guidelines the Attorney General shall consider the following objectives: (1) SERVICES TO VICTIMS OF CRIME—Law enforcement personnel should ensure that victims . . . are given information on the following

\* \* \* \* \* \*

(C) The role of the victim in the criminal justice process, including what they can expect from the system as well as what the system expects from them; and
(D) Stages in the criminal justice process of significance to a crime victim, and the manner in which information about such stages can be obtained.

\* \* \* \* \* \*

(4) PROMPT NOTIFICATION TO VICTIMS OF MAJOR SERIOUS CRIMES.—Victims, . . . relatives of those victims . . . and relatives of homicide victims should, if such persons provide the appropriate official with a current address and telephone number, receive prompt advance notification, if possible, of judicial proceedings relating to their case, including

\* \* \* \* \* \*

(D) Proceedings in the . . . sentencing . . .

\* \* \* \* \* \*

(10) GENERAL VICTIM ASSISTANCE—The guidelines should also ensure that any other important assistance to victims . . . such as the adoption of transportation, parking and translator services for victims in court be provided.

### The Guidelines

On July 9, 1983, the last day for issuing guidelines, the Attorney General issued the following:

## GUIDELINES FOR VICTIM AND WITNESS ASSISTANCE

### I. GENERAL CONSIDERATIONS

#### A. *Background*

The Victim and Witness Protection Act of 1982 (VWPA), Public Law 97–291, was enacted 'to enhance and protect the necessary role of crime victims and witnesses in the criminal justice process; to ensure that the federal government does all that is possible within limits of available resources to assist victims and witnesses of crime without infringing on the constitutional rights of defendants; and to provide a model for legislation for state and local governments.' Section 6 of the VWPA requires the Attorney General to develop and implement guidelines for the Department of Justice consistent with the purposes of the Act.

These guidelines set forth procedures to be followed in responding to the needs of crime victims and witnesses. They are intended to ensure that responsible officials, in the exercise of their discretion, treat victims and witnesses fairly and with understanding. The guidelines are also intended to enhance the assistance which victims and witnesses provide in criminal cases and to assist victims in recovering from their injuries and losses to the fullest extent possible consistent with available resources.

Finally, in addition to implementing Section 6 of the VWPA, these guidelines also reflect the view of the Department of Justice that the needs and interests of victims and witnesses have not received appropriate consideration in the federal criminal justice system. Thus, these guidelines incorporate victim and witness assistance concepts beyond those set out in the VWPA, in particular, pertinent recommendations of the President's Task Force on Victims of Crime.

#### B. *Application*

These guidelines apply to those components of the Department of Justice engaged in the detection, investigation or prosecution of crimes. They are intended to apply in all cases in which individual victims are adversely affected by criminal conduct or in which witnesses provide information regarding criminal activity. Of course, these guidelines do not apply to individuals involved or reasonably believed to have been

involved in the criminal offense. Under these guidelines, special attention should be paid to victims and witnesses who have suffered physical, financial or emotional trauma as a result of violent criminal activity. The amount and degree of assistance provided will, of course, vary according to the individual's needs and circumstances.

## C. *Definitions*

1. A 'victim' is generally defined as someone who suffers direct or threatened physical, emotional or financial harm as the result of the commission of a crime. The term 'victim' also includes the immediate family of a minor or a homicide victim. Federal departments and agencies shall not be considered a 'victim' for purposes of Part II of these guidelines.

It should be noted that, because of the nature of federal criminal cases, it will often be difficult to identify the victim or victims of the offense. In many cases, there will be multiple victims. The provision of assistance in such circumstances must be determined on a case-by-case basis.* In some cases, extension of the full range of victim services would be inappropriate because of the nature of the victim. Sound judgment will, therefore, be required to make intelligent decisions as to the degree of victim services and assistance given. Department personnel should always err on the side of providing rather than withholding assistance.

2. A 'witness' is defined as someone who has information or evidence concerning a crime, and provides information regarding his knowledge to a law enforcement agency. Where the witness is a minor, the term 'witness' includes an appropriate family member. The term 'witness' does not include defense witnesses or those individuals involved in the crime as a perpetrator or accomplice.

3. A 'serious crime' is defined as a criminal offense that involves personal violence, attempted or threatened personal violence or significant property loss.

## D. *Responsibility*

The responsibility to decide whether the provisions discussed in Part II of these guidelines should be applied initially or should be continued in a particular case is shared between that component of the Department responsible for investigating violations of federal law and the United States Attorneys' offices or Department attorneys who are responsible for prosecuting the perpetrators when they are identified. In cases where the United States or the public generally are the victims, victim services will normally be inappropriate (*e.g.,* tax evasion and narcotics trafficking); but in virtually all cases there will be witnesses who will be entitled to witness services.

For cases in which the United States Attorney's office has become involved, the responsible official shall be the United States Attorney in whose district the prosecution is pending. For cases in which a litigating division of the Department of Justice is solely responsible, the responsible official shall be the chief of the section having responsibility for the case. The Department attorney handling the case shall perform the same duties under these guidelines as are required of an Assistant United States Attorney.

For cases under investigation, but in which the United States Attorney's office or Department of Justice litigating division has not assumed responsibility, application of these guidelines will be the responsibility of the following officials:

1. With respect to offenses under investigation by the Federal Bureau of Investigation, the responsible official shall be the Special Agent in Charge of the Division having primary responsibility for conducting the investigation;

---

* Victim assistance should not be denied solely because there are multiple victims of an offense. For example, in a federal case involving a large-scale fraud scheme, it may be possible to extend victim services and assistance to a representative or representatives of the many victims of the crime.

2. With respect to offenses under investigation by the Drug Enforcement Administration, the responsible official shall be the Special Agent in Charge of the office having primary responsibility for the investigation; and

3. With respect to offenses under investigation by the Immigration and Naturalization Service, the responsible official shall be the District Director or Chief Patrol Agent of the office having primary responsibility for conducting the investigation.

The responsibility for deciding that the provisions of Part II should be applied or continued may be delegated. The component of the Department making the decision that the provisions of Part II should apply or continue to be applied must ensure that they are in fact applied either through its own resources or through coordination with other components of the Department or other agencies.

United States Attorneys' offices, litigating divisions and investigative agencies shall designate or employ one or more persons specifically for the purpose of carrying out the provisions of Part II. Smaller offices or components may have no need for such a victim-witness coordinator on a full-time basis. In every office, however, each responsible official shall designate one individual as the primary contact for victim-witness services.

All components of the Department shall cooperate with one another to the maximum extent possible in providing the services described in Part II. All components of the Department shall keep on file a written description of the procedures and materials used to provide assistance to victims and witnesses in individual cases. All components of the Department shall work with appropriate components of other federal agencies that investigate violations of federal law to assist them in providing services to victims and witnesses consistent with those described in Part II. Finally, all components of the Department shall take all steps necessary to coordinate their victim-witness service efforts with State and local law enforcement officials. Coordination of these efforts will take place, at minimum, through the Law Enforcement Coordinating Committees (LECC).

Where a victim or witness resides outside the judicial district in which the case is being prosecuted, the United States Attorney in the prosecuting district (or section chief of the litigating division) may, if necessary, seek the assistance of the United States Attorney's office in the district of residence in counseling, assisting or consulting with the victim or witness.

## II. SERVICES TO VICTIMS AND WITNESSES

The responsible official should ensure that the following services are provided and that personal contact is initiated with victims and witnesses whenever possible.

### A. Referral Services

Victims should receive information by the most appropriate and timely means, regarding available assistance. Department personnel should assist victims in contacting, where appropriate, the specific person or office which will provide the following:

1. Emergency medical and/or social services;

2. Compensation for which the victim may be entitled under applicable law and how to begin the process of applying for it; and

3. The availability of appropriate public or private programs that provide counseling, treatment, or support.

Victim witness assistance coordinators should develop and maintain accurate resource materials that identify available counseling and treatment programs in their jurisdictions.

### B. Information Services

Victims and witnesses of serious crimes who provide a current address or telephone number should be advised of the following information in a timely manner. As a general rule, investigative components will be responsible for points 1 and 2, and prosecutive components for points 3 through 11.

1. Steps that may, if warranted, be taken to protect the victim, his family, and witnesses from intimidation;

2. The arrest or formal charging of the accused;

3. Scheduling changes and/or continuances affecting their appearance or attendance at judicial proceedings;

4. The release or detention status of the accused;

5. The acceptance of a plea of guilty or nolo contendere or the results of a trial;

6. The date set for sentencing if the defendant is found guilty;

7. The sentence imposed including the date on which the defendant may be eligible for parole; and

8. For victims, the opportunity to address the court at the time of sentencing.

If the victim or witness has requested notice and has provided the responsible official with a current address or telephone number, he or she shall be advised in advance of the defendant's release from custody. In the event of an escape by the defendant, such victim or witness shall be apprised as soon as practicable. Moreover, a victim should be notified in advance of any parole hearing under the procedures specified above.

## C. *Consultation Services*

Consistent with the interests of justice, Department officials should consult victims of serious crimes to obtain their views and provide explanations regarding the following:

1. The release of the accused pending judicial proceedings and the conditions thereof;

2. The decision not to seek an indictment or otherwise commence a prosecution;

3. The proposed dismissal of any or all charges, including dismissal in favor of State prosecution;

4. Any continuance of a judicial proceeding;

5. The proposed terms of any negotiated plea including any sentencing recommendation to be made by the prosecutor;

6. The proposed placement of the accused in a pretrial diversion program;

7. The proposed proceeding against the accused as a juvenile defendant;

8. Restitution as described in Part IV; and

9. Presentation to the court of the victim's views regarding sentencing.

It is recognized that consultation services must be limited in some cases to avoid endangering the life or safety of a witness, jeopardizing an ongoing investigation or official proceeding or disclosing classified or privileged information.

## D. *Other Services*

In addition to the services described above, additional assistance should be extended as follows:

1. Department officials should avoid, to the extent possible, disclosing the addresses of victims and witnesses. Prosecutors should resist attempts by the defense to obtain the addresses of victims and witnesses;

2. To the extent possible, victims and other witnesses for the prosecution who are called as witnesses in any judicial or administrative proceeding should be afforded a waiting area, removed from and out of sight and earshot of the defendant and defense witnesses;

3. Property of any victim or witness which is held for evidentiary purposes should be maintained in good condition and promptly returned. If the property is not to be returned promptly, an explanation should be given to the victim or witness as to the property's significance in any criminal prosecution;

4. Upon request by a victim or witness, the responsible official should assist in notifying:

a. The employer of the victim or witness if his cooperation in the investigation or

prosecution of the crime causes his absence from work; and

    b. The creditors of the victim or witness, where appropriate, if the crime or his cooperation in its investigation or prosecution affects his ability to make timely payments;

    5. Responsible officials should establish programs to assist Department employees who are victims of crime;

    6. Victims and witnesses should be provided information or assistance with respect to transportation, parking, translator services and related services; and

    7. Responsible officials shall ensure that sexual assault victims are not required to assume the cost of physical examinations and materials used to obtain evidence; if a victim is billed for such an examination or materials, the victim shall be reimbursed therefor by the appropriate component of the Department.

## III. VICTIM IMPACT STATEMENT

The responsible official should ensure that the appropriate U.S. Probation Officer is fully advised of the information in his possession pertinent to preparation of the victim impact statement required by Rule 32(c)(2) of the Federal Rules of Criminal Procedure so that the report will fully reflect the effects of the crime upon victims as well as the appropriateness and amount of restitution. The victim should be apprised that the Probation Officer is required to prepare a victim impact statement which includes a provision on restitution. The victim should be advised as to how to communicate directly with the Probation Officer if he or she so desires. Consistent with available resources and their other responsibilities, federal prosecutors should advocate the interests of victims at the time of sentencing.

## IV. RESTITUTION

Restitution may be ordered under 18 U.S.C. 3579. Consistent with available resources and their other responsibilities, federal prosecutors should advocate fully the rights of victims on the issue of restitution unless such advocacy would unduly prolong or complicate the sentencing proceeding.

## V. OBSTRUCTION OF JUSTICE

Victims or witnesses should routinely receive information on the prohibition against victim or witness intimidation and harassment and the remedies therefor. The responsible official should, if warranted, advise the component of the Department having the enforcement responsibilities as set forth in 28 C.F.R. 0.179a, of instances involving intimidation or harassment of any victim or witness.

## VI. TRAINING

All components of the Department of Justice covered by the provisions of these guidelines should, beginning not later than 30 days after the issuance of these guidelines, provide training to existing and new employees concerning their responsibilities in carrying out these guidelines and provide written instructions to appropriate subcomponents to ensure that the provisions of this part are implemented.

Further, all training units conducted or supported by the Department of Justice shall develop programs which address victim assistance from the perspective of the personnel they train. These units include the FBI Academy at Quantico, the Attorney General's Advocacy Institute, and field training conducted by the FBI and DEA. Through agreements between the Departments of Justice and Treasury, similar efforts shall be undertaken at the Federal Law Enforcement Training Center at Glynco, Georgia.

## VII. NON–LITIGABILITY

These guidelines provide only internal Department of Justice guidance. They are not intended to, do not, and may not be relied upon to create any rights, substantive or procedural, enforceable at law by any person in any matter civil or criminal. Nor are any limitations hereby placed on otherwise lawful litigative prerogatives of the Department of Justice. Rather, these guidelines are intended to ensure that responsible officials, in the exercise of their discretion, treat victims and witnesses fairly and with understanding.

Approved this 9th day of July, 1983.

/s/ William French Smith
William French Smith
Attorney General

*The Procedural Posture and
Factual Context*

It is necessary also before addressing the constitutional questions to understand in more depth the procedural posture and the pertinent facts. The situation includes the following:

1. At the sentencing hearing each of the presentence reports submitted to the Court and to the parties by the Probation Service included the following:

*Victim/Impact Statement.* Paulene Calloway incurred medical expenses totaling $599. She stated to this officer that she had had some problems sleeping and being by herself at night. She is now working and feels that she does not need further medical attention or psychological counseling.

This Court had a good opportunity to observe Miss Calloway while she was testifying before the jury. She had been hit in the head with a shotgun, had seen her boy friend dead on the floor of their home, was stripped naked, was threatened with death, and was twice made to engage in oral sex while bleeding profusely from her head wound. When she escaped she was in a state of hysteria. While she testified she was shaking perceptibly. The Court cannot accept as accurate the Probation Service's implied suggestion that restitution to Miss Calloway should be limited to $599. The Court strongly suspects that Miss Calloway will need counseling for a long period of time. Her experience was as bad as, or worse than, combat experiences in Vietnam which have left permanent psychological scars on many Vietnam veterans.

There was no indication from any person at the sentencing hearing as to whether or not Miss Calloway lost any income, and, if so, how much.

The Government gave the Court no indication as to whether or not it had invited Miss Calloway to testify at the sentencing hearing, or to present any evidence in support of her restitution claim. Miss Calloway was not present.

There was no information presented to the Court as to whether or not the $599 in medical expenses had actually been paid by Miss Calloway or had been paid by, or is yet to be paid by, an insurance company, in whole or in part, thus creating a subrogation claim or a secondary "victim" under § 3579(e)(1).

2. At the sentencing hearing the presentence reports said nothing about Charles Hill, Miss Calloway's boy friend who was killed during her abduction. The presentence reports gave no information whatsoever upon which the Court could base any order of restitution to the estate of Mr. Hill. The Probation Officer, in response to the Court's question, said that he did not consider Mr. Hill a "victim". The Probation Officer is competent and dedicated but he is neither learned in the law nor is he trained as an investigator in civil cases. The Assistant United States Attorney said nothing on the subject. This is not said in criticism of him. He obviously had not been asked to anticipate the question.

3. At the sentencing hearing the presentence reports said nothing about Dervin Little, whose automobile was used by the defendants during the kidnapping. Because Miss Calloway's blood was on the back seat of Mr. Little's car, and on the head rest, the FBI cut the bloodstains out of the upholstery. Mr. Little obviously suffered some property damage. He is therefore a "victim" under § 3579, that is, unless he has already been compensated by insurance or by the Government. The Court has been offered no information on this subject.

4. At the sentencing hearing the presentence reports contained the following allegations as to the respective financial conditions of the three defendants:

WELDEN

*Assets.* According to the defendant, he has the following financial assets: two lots, 90' × 100' —$4,000; house trailer,

28' × 56' —$15,000; building—$20,000; 1974 Camaro—$1,200.

*Obligations.* Owes $17,000.

## ALLISON

*Assets.* Home and two acres, $11,000; a 1959 Thunderbird, $1,000; a 1975 van, $1,000. The defendant's wife is receiving $199 in food stamps from Jackson County.

*Obligations.* $10,000 lawyer's fee—according to the defendant's wife, the home and two acres are mortgaged to the attorney; Herman Smith, $8,000; hospital bill, $2,000.

## SATTERFIELD

*Assets.* None.

*Obligations.* According to the defendant, he owes money to the credit union where he was employed. The amount is unknown.

The accuracy of this hearsay information on Satterfield is or is not brought into question by the fact that Satterfield's counsel stated at the hearing that Satterfield owns a statutory right-to-redeem certain of his property from foreclosure sale, and that this property right is worth approximately $12,000.00. This would contradict Satterfield's presentence report which shows him to be insolvent. This information from Satterfield's attorney is, of course, not supported by any expert testimony of value, and the value of a right-to-redeem is by its nature speculative. The Probation Service's estimates of value of the property owned by Weldon and Allison is not supported by expert testimony. There is no indication as to whether or not any of the property alleged to be owned by any of the defendants is owned solely by the defendant or jointly with others. Such information certainly would be material in making an intelligent decision as to the true financial condition of a defendant.

5. During the sentencing hearing, as previously stated, each defendant filed a motion challenging the constitutionality of §§ 3579 and 3580. In the alternative, they demanded a jury trial after discovery under the Federal Rules of Civil Procedure. Typical of the motions is that of Satterfield, which says:

## MOTION TO HAVE 18 USC §§ 3579 AND 3580 DECLARED UNCONSTITUTIONAL AND FOR OTHER RELIEF

Comes now Edward Eugene Satterfield, one of the defendants in the above styled cause, who was adjudicated guilty of a crime under Title 18, United States Code on July 14, 1983, and prior to being sentenced hereby objects to the application of 18 U.S.C. §§ 3579 and 3580, a portion of the Victim and Witness Protection Act of 1982, to defendant as being in violation of the Fifth, Sixth, Seventh and Fourteenth Amendments to the Constitution of the United States. The Act, insofar as it purports to required restitution and to provide procedures for restitution, violates "due process", "equal protection", the guarantee of trial by jury in both civil and criminal cases, and the long recognized prohibition of imprisonment for debt. Defendant prays that said §§ 3579 and 3580, and each provision thereof, separately and severally, be void and of no force and effect.

In the alternative, defendant, prior to being sentenced, demands a trial by jury, with appointed counsel, as to the question of the amount of liability, if any, by defendant to the estate of the deceased, and to any other person or organization.

In addition, and in the alternative, defendant moves for a continuance of any hearing or proceeding involving restitution for an Order establishing the availability of subpoena power and discovery procedures for defendant under the Federal Rules of Civil Procedure in order to enable defendant to prepare to defend the restitution aspect of this case.

At the sentencing hearing defendants did not concede the accuracy of the hearsay report of $599 in medical expenses for Miss Calloway. They disputed it. One defendant argued that in the event the Court denied his motion and ordered restitution, the amount should be apportioned among

the defendants by their respective degrees of guilt or culpability. Another urged that restitution should be apportioned in accordance with the respective defendants' abilities to pay. The Government did not express itself as to how to apportion any restitution as among the three defendants.

## Questions Which Occur

So many questions flood to mind in this case that it is impossible for the Court to ask them all, much less to answer them all. Although it is not incumbent on the Court to answer unasked questions, the asking of certain questions may help to answer the ultimate question, namely, the constitutionality of §§ 3579 and 3580. The following are some of the questions which occur. The Court will answer some and leave others unanswered.

1. The Act obviously contemplates an extremely broad discretion in the trial court. For instance, § 3580(d), contains this provision: "The burden of demonstrating such other matters as the court deems appropriate shall be upon the party designated by the court as justice requires". Also, § 3580(a) provides that in determining whether to order restitution the court shall consider certain designated factors "and such other factors as the court deems appropriate". How broad and unbridled a discretion can be granted to a court without violating "due process" and/or "equal protection"?

2. Considering the absence of the customary procedural rules for determining civil liability, how disparate can restitution orders be in the various district courts around the nation in similar fact situations without there being a violation of "due process" and/or "equal protection"?

3. If it is possible for a trial court to abuse its discretion (as it obviously is), what criteria, not appearing in the Act, must a trial court use if it is to avoid an abuse of discretion, and in what order of priority?

a. If the Government is unprepared or unwilling to represent the victim's interests, should the Court become the victim's advocate?

b. Can the court take the Probation Service's hearsay victim-impact-statement as the final word on the amount due the victim?

c. If the court is dealing with more than one defendant, should it apportion the restitution amount between the defendants on the basis of their degrees of guilt, or on the basis of their ability to pay, or some other basis or bases?

d. Can, or should, the court enter judgment for the full amount of the restitution against all defendants if there is more than one defendant, as in a joint-and-several tort verdict, so as to enhance the victim's chances of collection? If the court does this, and one defendant pays the entire sum to the victim, are the other defendants "off-the hook", since most states are like Alabama and permit no contribution among joint tort-feasors?

e. Is Congress calling upon each individual federal judge to innovate and to create procedures by which to guarantee all constitutional protections and immunities to the defendant and to the victim?

4. If the trial court decides not to order restitution under § 3579(a)(2), what "reasons" can the court "state on the record" which will be acceptable?

5. If the trial court decides to order only "partial restitution" under § 3579(a)(2), what "reasons" can it "state on the record" which will be acceptable?

6. How can the trial court reconcile the irreconcilable mandates of § 3579(d) that the order be "as fair as possible to the victim" and yet "not unduly complicate or prolong the sentencing process"? Would a finding that this task is impossible suffice as a "reason" for not ordering restitution under § 3579(a)(2)?

7. If a victim is killed during the crime, who is responsible for setting up the "victim's estate", as required by § 3579(b)(3) and § 3579(c)?

8. Keeping in mind that § 3579(c) uses the mandatory "shall" where the victim is killed, if no letters of administration have been taken out by the victim's personal

representative by the time of the sentencing, can the trial court nevertheless order that restitution be made to the widow and/or children of the victim?

9. If there are minor children of a deceased victim, and no estate has been opened, does the trial court have to appoint a guardian *ad litem* for them?

10. Can the wrongful death statute of the State of residence of the deceased victim be used to determine the persons to whom restitution should be made? Do they constitute the "victim's estate"?

11. How does the trial court go about determining "the costs of *necessary* funeral *and related services*" under § 3579(3) (emphasis supplied)? Some people have expensive funerals.

12. Since under § 3579(b)(4) the "victim's estate" or the "victim" can designate another person or organization as beneficiary of the restitution order, how does the trial court satisfy itself that the "victim" or the "victim's estate" has waived this particular right or has not exercised it?

13. Since § 3580(e) expressly estops a defendant from denying the essential allegations of his offense in any subsequent civil proceeding brought by the "victim", but does not mention a "victim's estate" (the two are treated as distinct throughout the Act), does a "victim's estate" not enjoy any purported *res judicata* from a restitution order in its favor, and if not, why not?

14. Is the "victim's estate" to be ascertained or defined under the laws of the state of the forum or under the state of the residence of the deceased "victim"?

15. Must the "victim" or the "victim's estate" be notified of the sentencing hearing and be given an opportunity to attend? If so, when and how is the notice to be given? In other words, is the "victim" entitled to "due process" where his rights are being substantially affected? Does the "victim" have a right to a jury trial?

16. Under the mandate to the Attorney General to issue "guidelines" can he fill in the many procedural gaps appearing in §§ 3579 and 3580? In other words, can the prosecutor be constitutionally permitted to create rules binding on the persons he is charged with prosecuting? Apparently the Attorney General does not think so, because in his new Guidelines he says:

> These guidelines provide only internal Department of Justice guidance. They are not intended to, do not, and may not be relied upon to create any rights, substantive or procedural, enforceable at law by any person in any matter civil or criminal.

17. Do the Federal Rules of Evidence apply during the restitution hearing? For instance, is "hearsay" admissible?

18. Can a victim bargain with the perpetrator of the crime over the question of the perpetrator's civil liability, and use the United States Attorney as his mouthpiece?

19. If, pursuant to § 3579(f), the trial court orders restitution by a date certain and if the court immediately places defendant on probation (probation under the Act must be conditioned upon compliance with the restitution order), and if the probationer's financial condition should dramatically improve, or if the victim's situation should deteriorate, can the court revise its restitution order by increasing the amount?

20. If, pursuant to § 3579(f)(3), the trial court orders immediate restitution, together with a prison sentence, and the defendant cannot, or will not, make restitution, what is the procedural device available to defendant, if any, to obtain his eventual release from incarceration? Or must he simply stay in jail until he complies?

21. Although § 3580 requires that a trial court disclose the presentence report both to the defendant and to his attorney, it does not state when the disclosure is to take place in relation to the sentencing hearing. Can the presentence report be disclosed for the first time during the hearing without any opportunity for the defendant or his attorney to prepare or to dispute the Probation Service's hearsay victim-impact-statement?

22. Where there is a dispute over the "proper amount or type of restitution",

§ 3580(d) says that the "dispute shall be resolved by the court [*not by a jury*] by the preponderance of the evidence", with "the burden of demonstrating the amount of the loss" being on the "attorney for the Government". This Court has heard of a burden of proof being on a *party,* but this Court has never heard of a burden of proof being on an *attorney.* Can a burden of proof be placed on an attorney and comply with "due process"?

23. If the trial court should enter a specific order of restitution under § 3579(f), and if the defendant should fail to comply, what are the sanctions? Can the court or the Parole Commission prolong incarceration, or can the court order incarceration if the defendant is not incarcerated at the time of his failure to pay? Who can initiate the inquiry, and how?

24. When the trial court is called upon by § 3580(d) to determine the "financial resources of the defendant and the financial needs of the defendant", considering that the burden is on the defendant on these factual issues, can the court consider sizable assets of defendant's spouse as "financial resources of defendant"? In addition, is it the responsibility of the court to set aside fraudulent conveyances and assignments designed to frustrate collection and to reduce the value of defendant's assets?

25. Must the considerable amount of lawyer-time which will be spent by a court-appointed attorney in defense of a potential restitution claim at sentencing be paid for by the Government if the defendant claims that he is indigent, or does the decision at arraignment that the defendant is "indigent" provide an automatic justification for not ordering restitution?

26. In light of the admonition in § 3579(a)(1) that the restitution order must be entered "when sentencing a defendant", can the trial court enter a "piecemeal" or partial sentence, fixing a prison sentence on one day and reserving for future hearing and decision the restitution issue?

27. If the restitution issue is not decided simultaneously with assessing other criminal penalties, when does the defendant's appeal time begin to run?

28. Under § 3580(d) who has the burden of proof, by a preponderance of the evidence, as to the "*type* of restitution"? (emphasis supplied). The language of § 3580(d) clearly does not designate the burden of proof on this important issue.

29. Can a trial court enter a restitution order which, in effect, gives a defendant a means of buying his way out of jail by making restitution in a sizable amount to the victim, even though there may have been no real adversarial hearing or taking of evidence to justify the amount? If so, does such a possibility give too much leverage to the trial court and/or to the victim?

30. If, in applying § 3580(d), the burden of proof can be placed by different trial courts as to the same factual issue upon different parties, has a defendant who fails to meet a burden placed on him but not placed on other defendants similarly situated been afforded "equal protection" and/or "due process"?

31. Inasmuch as a restitution order under § 3579(h) can be enforced by a victim "as a judgment in a civil action", is the defendant entitled to a jury trial as in all other civil actions?

32. Inasmuch as a restitution order under § 3580(e) estops a defendant "from denying the essential allegations" of his offense in any subsequent civil proceeding, State or Federal, brought by the victim, does this purported judicial estoppel or *res judicata* bind those in privity with the defendant, *i.e.,* his insurance carrier?

33. When a victim starts to levy on a defendant's property in order to enforce the restitution order, which has the full force and effect of a civil judgment, can the defendant claim his personal property and/or homestead exemption under State law?

34. Is an exemption from execution under State law forfeited by a defendant upon his conviction of a federal crime?

35. Will a defendant's claim of exemption under State law adversely affect his

parole possibilities before the Parole Commission?

36. Can a defendant's State law exemptions be taken away from him without a "due process" hearing?

37. When § 3579(e)(1) says that the trial court "shall not impose restitution with respect to a loss for which the victim ... is to receive compensation", how does the court go about determining whether or not the victim *will later receive compensation,* considering that such a question may be unanswerable and subject to litigation for years to come? Or may the trial court simply defer the sentencing for several years until this issue is resolved?

38. Can the Government appeal from a trial court's finding on restitution with which the Government disagrees? For instance, can the United States appeal from this Court's order which preceded this opinion?

39. Can a victim appeal from a trial court's restitution finding with which he disagrees?

40. Can a defendant appeal from a trial court's restitution finding with which he disagrees? If he can, doesn't his victim have the same right, considering that in civil cases both sides have always heretofore had a right to appeal?

41. What procedure is available to an incarcerated defendant to make sure that his "victim" does not collect from him twice, once under the restitution order and again by enforcement of a State court judgment? Is the "set-off" provision in the Witness Protection and Victim Restitution Act of 1982 enforceable in a state court?

### The Legislative History Or Lack Of Legislative History

On April 22, 1982, S.2420, which became the Victim and Witness Protection Act of 1982, was first introduced in the Senate. Significantly this was during "Crime Victims Week". The Bill was reported out by the Senate Committee on the Judiciary as the "Omnibus Victim Protection Act of 1982". The word "restitution" was not

then contained in the caption. According to the Congressional Record of April 22, 1982, at Vol. 128, page 3853, neither Senator Howell Heflin nor Senator Jeremiah Denton, Alabama's two Senators and both members of the Committee of the Judiciary, was an original sponsor of the Bill. The legislative history is sparse, but it is readily apparent that Congress was attempting quickly to respond to a national concern over protection for witnesses, and later to a concern for victim compensation. The "witness protection" provisions of the Act are not here being questioned.

After the original draft of the Bill there were many amendments. The Court has been unable to reconstruct the legislative history in detail, but easily concludes that the noble idea of "victim restitution" in the form of an enforceable civil judgment came into being relatively late in the legislative process. Thereafter, it moved quickly to passage. Conspicuously the Court finds no debate in committee or on the floor of either House as to any of the constitutional questions here being discussed. The good lawyers in both Houses apparently did not do what this Court is being forced to do.

The fact that Congress failed to comprehend the full import and impact of the Act, insofar as its "victim restitution" provisions are concerned, is revealed in the Statement of Purpose found in Senate Report No. 97–532, U.S.Code Cong. & Admin.News 1982, 2515, as follows:

> S.2420 does not call for increased Federal expenditures; in fact, it has been designed to ensure that improvements will be made within the limits of available Federal resources.

Any analysis of the cost of implementing §§ 3579 and 3580 will reveal a need for more federal judges, for more federal prosecutors and for more and better trained probation officers, not to mention more personnel in the clerk's offices. Congress simply failed to comprehend the price tag for "victim restitution", particularly if the courts are called upon to fill in the gaps and to create the constitutional requirements either denied by or absent from the Act. It

is also interesting that in the original Statement of Purpose appearing at [1982] 3 U.S., Cong. & Admin.News 2515, not one word is said about an order of restitution to a victim. This, again indicates that "victim restitution" was an afterthought.

Furthermore, in the legislative history appearing in [1982] 3 U.S., Cong. & Admin. News 2536, *et seq.*, the following analysis appears:

As simple as the principle of restitution is, it lost its priority status in the sentencing procedures of our federal courts long ago. Under current law, 18 U.S.C. 3651, the court may order restitution for actual damage or loss, but only as part of a probationary sentence.

As a matter of practice, even that discretionary grant of authority is infrequently used and indifferently enforced. In this respect, federal criminal courts have gone the way of their state counterparts, reducing restitution from being an inevitable if not exclusive sanction to being an occasional afterthought.

Crime victims and their advocates have called on state legislators to restore restitution to its proper place in criminal law. They point out that the average dollar losses victims suffer total hundreds of dollars, not thousands, and that most ex-offenders, not just those on probation, have some means to undo the financial harm they have done. There is no reason to believe that victims of federal crimes do not have the same grievances. The legislative remedies proposed here parallel those being enacted by state legislatures. [If this is true the state statutes have not been tested].

\*    \*    \*    \*    \*    \*

. . . new methods at constructive, victim-oriented sentencing practices can insure, for example, that the prosecutorial, judicial and probation authorities know, and are encouraged to respond to, the victim's monetary damage. A hallmark of this revived effort at producing restitutive justice is the creative use of "split sentences", *requiring felons, after a period of incarceration, to act responsibly in the free community (including paying restitution) or face a much longer term in prison.* This kind of sentencing is not specially authorized under federal law at this time.

Similarly, *federal statutes, unlike many state statutes, do not declare that the underlying facts of an adjudicated crime are to be treated as res judicata in a later civil proceeding. That is an ambiguity in the law that the bill would also correct.*

Typically, sentences in both federal and state courts are less likely to require restitution if the victim was insured. The common practice of not permitting insurance companies to be subrogated to the rights of the insured victims means that some offenders are being relieved of their debts. It also means that insurance companies and the insurance-buying public are being asked to pay off the offender's debt. Finally, there is a problem in the federal system in the common inattention of criminal justice authorities to enforce restitution orders after they are made. The bill encourages better monitoring and enforcement procedures.

\*    \*    \*    \*    \*    \*

Section 3579(a) expands current law by *authorizing an order of restitution independent of a condition of probation,* thereby permitting its use in conjunction with imprisonment, fine, suspended sentence, or other sentence imposed by the court.

\*    \*    \*    \*    \*    \*

Subsection (b)(5) substantially increases the victim's chances of collecting restitution by permitting either the victim or the United States to *enforce the order in the same manner as a judgment in a civil action.* Under this subsection, Rule 64 of the Federal Rules of Civil Procedure is made applicable, and the remedies available include *arrest,* attachment, garnishment, replevin, and sequestration.

Section (c) mandates compliance of any restitution orders imposed under § 3579 as a condition of probation or parole. Failure to comply with such orders is

grounds for probation or parole revocation hearing. (emphasis supplied).

From a careful look at the sparse legislative history which is available, the Court concludes that constitutional considerations took a back seat.

### The Constitutional Questions

#### THE EIGHTH AMENDMENT

■ The Eighth Amendment prohibits "excessive fines" and prohibits "cruel and unusual punishment". Does an order of restitution under §§ 3579 and 3580 constitute a "fine" so that it is subject to the limitation of excessiveness? This Court concludes that it does. This does not mean that §§ 3579 and 3580 are unconstitutional, because in some cases a defendant can be required to pay $100,000 to a badly and permanently injured victim as a condition of parole without its being "excessive". "Excessiveness" is a question for each individual case. It is not a question in this case.

■ The next question, however, is more difficult. Would it be "cruel and unusual punishment" if a defendant must remain in jail because he does not pay what is, in effect, a civil judgment. No one doubts that simple and straight-forward imprisonment for debt violates the Eighth Amendment prohibition against "cruel and unusual punishment". Therefore, if a court, pursuant to §§ 3579 and 3580, should order a defendant to make restitution in a particular amount and put it in the form of a civil judgment to be paid on or before a date certain, and should follow up on the legislative history revealing a Congressional belief that a victim's chances of collecting would be enhanced if "the remedies available include *arrest*" (emphasis supplied). Newgate prison will be rising from the ashes. Does Congress intend that if a trial court orders restitution without incarceration that the defendant can be put in jail as a means of enforcing collection? While the Act contains provisions which seem to create an area of discretion in the courts and, perhaps, an escape valve from the ogre of imprisonment for debt, other provisions

have a mandatory sound. The Act certainly encourages and allows trial courts to keep defendants in jail, or to put defendants in jail, if they fail to pay restitution.

It is true, of course, as pointed out by the Government in this case, that "federal statutes are to be so construed as to avoid serious doubt of their constitutionality". *International Assn. of Maturity v. Street,* 367 U.S. 740, 749, 81 S.Ct. 1784, 1790, 6 L.Ed.2d 1141 (1961). It is also true, as also pointed out by the Government, that for decades federal courts have occasionally made restitution a condition to probation, pursuant to 18 U.S.C. § 3651, which was enacted in 1925. Some federal appellate courts have found that 18 U.S.C. § 3651 does not violate the Eighth Amendment prohibition against "cruel and unusual punishment". *United States v. William Anderson Co., Inc.,* 698 F.2d 911 (8th Cir.1982). The Supreme Court of the United States has never expressed itself directly on this question. It has on several occasions dealt with 18 U.S.C. § 3651. *United States v. Murray,* 275 U.S. 347, 48 S.Ct. 146, 72 L.Ed. 309 (1928); *Burns v. United States,* 287 U.S. 216, 53 S.Ct. 154, 77 L.Ed. 266 (1932); *Korematsu v. United States,* 319 U.S. 432, 63 S.Ct. 1124, 87 L.Ed. 1497 (1943); *Roberts v. United States,* 320 U.S. 264, 64 S.Ct. 113, 88 L.Ed. 41 (1943); and *Durst v. United States,* 434 U.S. 542, 98 S.Ct. 849, 55 L.Ed.2d 14 (1978). In none of these cases was the Supreme Court called upon to address the Eighth Amendment question here raised by Weldon, Satterfield and Allison. The constitutionality of § 3651 may have been assumed.

Although the Supreme Court has not addressed the Eighth Amendment problems inhering in 18 U.S.C. § 3651, or in 18 U.S.C. § 3579, or in 18 U.S.C. § 3580, it recently took a close look at the plight of a Georgia prisoner whose probation was revoked "for failure to pay a fine and restitution". *Bearden v. Georgia,* —— U.S. ——, 103 S.Ct. 2064, 2067, 76 L.Ed.2d 221 (1983). The Court concluded "that the trial court erred in automatically revoking probation because petitioner could not pay his fine, without

determining that petitioner had not made sufficient bona fide efforts to pay or that adequate alternative forms of punishment did not exist". The majority never spoke of the Eighth Amendment. It did deal with the Fourteenth Amendment, which, as to the several States, picks up the guarantees of the Bill of Rights. The State of Georgia there argued, as here does the legislative history leading to the adoption of §§ 3579 and 3580, "that revoking probation furthers its interest in insuring that restitution be paid to the victims of crime". The Supreme Court unanimously recognized an overriding interest in honoring the rights of "due process" and "equal protection".

While Congress in enacting §§ 3579 and 3580 may have adequately anticipated *Bearden* by allowing a trial court to evaluate a defendant's financial condition and his attitude as factors in determining whether or not to order restitution, and, if so, in what amount, the fact that any court who does not order restitution must justify itself on the record, gives a dimension to the Act which applies real pressure for a money judgment. In fact, the legislative history shows dissatisfaction with 18 U.S.C. § 3651 only because it has not been regularly used. Furthermore, under certain types of restitution orders, the procedure for relief in the event of a defendant's poverty are, to say the least, nebulous, or to say the most, non-existent.

Nowhere in §§ 3579 or 3580 does the *Bearden* concept of a "bona fide effort" appear. Perhaps this concept is implicit in the statutory language, or perhaps the language can be construed to call for relief to a prisoner if he has made a "bona fide effort" to pay, but this concept also may well have been implicit in the law of Georgia, and yet the Supreme Court in *Bearden* required that it henceforth be an "express" part of the law of Georgia, and, for that matter, of every state, and presumably of the United States. Until some court or Congress adds the "bona fide effort" language to §§ 3579 and 3580, it is not a part of the Act.

The State of Georgia also argued that its revocation of probation was in furtherance of its "interest in punishment and deterrence". 103 S.Ct. 2073. The Supreme Court found that this State interest could just as well be served by alternative means, such as stretched out payments or requiring specified work in lieu of the fine. The Act here under consideration does not have the flexibility insisted upon by *Bearden,* but it does, perhaps, have enough flexibility to meet this Supreme Court criticism of the Georgia law.

In the concurring opinion in *Bearden,* four Justices worry about the effect of imprisonment if a trial court should find, after hearing, that alternative methods of punishment are inadequate, and, if, upon such finding, the trial court should impose a jail sentence not commensurate with the crime in order to force payment of restitution. These four Justices mention the Eighth Amendment and cite *Williams v. Illinois,* 399 U.S. 235, 90 S.Ct. 2018, 26 L.Ed.2d 586 (1970), and *Tate v. Short,* 401 U.S. 395, 91 S.Ct. 668, 28 L.Ed.2d 130 (1971), for the proposition that the automatic conversion of a fine into a jail term is forbidden by the Equal Protection Clause. The four remind their sister and brothers at 103 S.Ct. 2075:

> In building a superstructure of procedural steps that sentencing courts must follow, the Court seems to forget its own concern about imprisoning an indigent person for failure to pay a fine.

Did Congress, in "building its superstructure of procedural steps" in the Witness Protection and Restitution Act of 1982 (*or in failing to do so*), express any serious concern about the possibility of imprisoning a person for debt?

Even though this Court has serious doubts as to whether §§ 3579 and 3580 comply with the Eighth Amendment, the Court finds it possible to construe the Act so as to pass muster under the Eighth Amendment by indulging the presumption of constitutionality. Only for this reason the Court finds that the Act does not violate the Eighth Amendment.

## THE SIXTH AND SEVENTH AMENDMENTS

■ Is a defendant, after he has been convicted, entitled to a jury trial on the issue of how much money he owes to a third person? The Sixth Amendment entitles a criminally accused person to a "trial by an impartial jury". This provision, however, has never been carried beyond the adjudication of guilt, and this Court does not believe that this particular provision of the Sixth Amendment is here applicable.

However, the Seventh Amendment provides that "the right of jury trial shall be preserved" in civil cases "where the value in controversy exceeds twenty dollars". The value in controversy in this case certainly exceeds twenty dollars, and § 3579(h) turns a restitution order into a civil judgment. This Court cannot construe a hearing which necessarily results in a civil judgment, (particularly when it has the effect of *res judicata*), not to be a "suit at common law" within the contemplation of the Seventh Amendment. *See* 4 Blackstone's Commentaries 355. It is certainly not a proceeding in equity. A jury trial is clearly and flatly denied by § 3579. Therefore, since under §§ 3579 and 3580 a court is unable to impanel a jury for the purpose of deciding a disputed issue of damage, this Court must hold, and does hold, that §§ 3579 and 3580 violate the right to a jury trial under the Seventh Amendment, and that an adjudication of criminal guilt does not take away from a defendant his civil right to a jury trial guaranteed to all other persons.

## THE FIFTH AND FOURTEENTH AMENDMENTS

■ In arguing the "due process" and "equal protection" questions, the Government points out that 18 U.S.C. § 3651, the Probation Act of 1925, has been held to be constitutional under Fifth Amendment scrutiny. In *United States v. Baker*, 429 F.2d 1344 (7th Cir.1977), the Seventh Circuit found that the Probation Act was not unconstitutionally vague and that the delegation of discretionary powers need not rest on precise standards or specific guiding factors. *Baker* was not reviewed by the Supreme Court, but this Court does not disagree with the general principle therein stated at 429 F.2d 1347, as follows:

> Congress clearly felt that the broad discretion thus vested in the sentencing judge was integral to the effective disposition of the post-conviction treatment of offenders.

Unfortunately, Congress was not content with the Probation Act as a vehicle for administering post-conviction justice. Instead, it enacted §§ 3579 and 3580 which present to a trial court a long list of unanswered questions and mandate that the Attorney General somehow provide a workable procedural structure. This Court thinks that Congress granted too much discretion to the courts and to the Attorney General, and, by exceeding its powers of delegation, created a potential Frankenstein. While it may be true that mere difficulty of the task, or imposition of responsibility beyond the capability of the Federal Judiciary, of the Department of Justice or of the Probation Service, does not automatically render legislation unconstitutional, they do raise serious questions.

■ "Due process" and "equal protection" are brother and sister. To meet their requirements, a statute must not subject an individual to arbitrary or uneven exercises of power. *Sexton v. Barry*, 233 F.2d 220 (6th Cir.1956) cert. den., 352 U.S. 870, 77 S.Ct. 94, 1 L.Ed.2d 76. The test of "due process" is essentially a test of fairness and reasonableness. *Barker v. Hardway*, 283 F.Supp. 228 (S.D.W.Va.1968), aff'd. 399 F.2d 638, cert. den., 394 U.S. 905, 89 S.Ct. 1009, 22 L.Ed.2d 217. There must always be *ascertainable standards*. In this Act, the Congress not only was a poor draftsman, but in many respects it unleashed courts without providing them standards, such as rules of evidence, rules of discovery, burdens of proof, requirements of notice, requirements of standing, and the like. For instance, the brief filed by the Government in this case categorically and correctly states:

> The Federal Rules of Evidence are not applicable at a sentencing hearing.

This only means that a court is called upon to decide a serious factual issue on hearsay evidence. This absence of rules is again illustrated by the Probation Officer's third hand reference in this case to the amount of Miss Calloway's hospital bill. Where a judgment is *res judicata* and collectible as other civil judgments, more procedural safeguards must be preserved than are recognized in §§ 3579 and 3580.

The Fifth Amendment simply and unequivocally states that "no person shall ... be deprived of life, liberty or property without due process of law ..." There is a crucial distinction between ordering restitution as a condition of probation, as in the Probation Act of 1925, and entering a civil judgment against a person on the hearsay testimony of a witness without any discovery and without cross-examination. This is not "fair". This is not "reasonable". This is not "due process".

In the instant case, Satterfield's attorney is court-appointed. It may well be that Satterfield's right to counsel under the Sixth Amendment, taken together with the Fifth Amendment requirement of "due process", implies not only Satterfield's right to have court appointed counsel at the sentencing hearing, but implies counsel's right to see the presentence report well in advance of the hearing, to prepare for a full-scale trial on the merits of the damages issue, and to present an array of witnesses. None of this is remotely contemplated by §§ 3579 and 3580.

The probability of disparate results in different federal courts is so great in §§ 3579 and 3580 that it is impossible to look forward to enough equality of application for the Act to comply with "equal protection".

For the foregoing reasons, the Court concludes that §§ 3579 and 3580 violate the Fifth Amendment requirements of "due process" and of "equal protection".

### The Policy Considerations

This Court fully understands and acknowledges that only Congress is charged with the responsibility for setting public policy. The courts are not. However, the courts are charged with the responsibility for determining whether or not that public policy, as announced by Congress, meets the tests stated in the various provisions of the Constitution of the United States. For instance, while this Court shares with the Supreme Court in *Bearden* its fear that a heavily enforced "victim restitution" policy "may have the perverse effect of inducing the probationer to use illegal means to acquire funds to pay in order to avoid revocation" (103 S.Ct. 2072), such a policy debate cannot, and does not, affect the Court's consideration of this case. A risk of perverse effect can be taken by Congress. Also, Congress, up to a point, has the right to be wrong on the fiscal effects of its legislation. The Court suspects that if §§ 3579 and 3580 should be seriously enforced it would cost less for the public treasury to write checks direct to the victims.

Likewise, this Court has, during its recent reception of guilty pleas, noticed that defendants are startled to learn that there are no outside parameters for the amount of restitution which they may be forced to pay, and that the Court cannot tell them in advance as it does the maximum prison term or the maximum fine for a particular offense. This "loose end" of "restitution" is scaring defendants into pleas of "not guilty" and clogging the criminal trial docket. This hardly comports with the Congressional expression that ordering "restitution" will not cost the taxpayers anything. Still, policy making, bad or good, is the prerogative of Congress. The Court has consciously endeavored to avoid having its thinking shaped by the practical effects of §§ 3579 and 3580, that is except where "impracticality" moves across the line from "policy" into a denial of "due process".

### CONCLUSION

When the Court on July 20, 1983, orally announced its decision that §§ 3579 and 3580 are unconstitutional, subject to completing this written opinion, the Court said: "I don't expect to be the last court to speak on this question, but it looks like I'll be the

first". The Court knows that it is entering where angels fear to tread, but enter it must.

If "victim restitution" is to be a serious public policy in the United States, and a viable sentencing alternative, it would be unconscionable for this Court to award Miss Calloway only $599 in this case. It would also be unconscionable for this Court not to pay one dime to Mr. Hill's estate or to those persons who paid his funeral expenses. The Court might struggle to find a way not to pay Mr. Little for his damaged upholstery. If, on the other hand, §§ 3579 and 3580 are unconstitutional, it would be unconscionable to award Miss Calloway, or Mr. Hill's estate, or Mr. Little, the sizable sums of money they would be entitled to at the conclusion of any serious hearing on the amount of their damages.

The Court has decided that §§ 3579 and 3580 are unconstitutional. A separate written order is unnecessary, inasmuch as the oral order declaring these statutes null, void and of no force and effect, has already been entered on July 20, 1983.