**UNITED STATES of America,**

v.

**Perry Don ALLISON.**

**No. CR 83–AR–123–M.**

United States District Court,
N.D. Alabama.

Jan. 2, 1985.

W.M. Beck, Sr., Fort Payne, Ala., and Charles Caldwell, Birmingham, Ala., for defendant Allison.

Charles McGee, Fort Payne, Ala., Mike Raulston, Chattanooga, Tenn., for defendant Welden.

Craig R. Izard, Birmingham, Ala., for defendant Satterfield.

## MEMORANDUM OPINION

ACKER, District Judge.

On December 21, 1984, in response to the mandate of the Court of Appeals for the Eleventh Circuit following its opinion in *United States v. Satterfield,* 743 F.2d 827 (11th Cir.1984), in which the Court of Appeals reviewed this court's decision in *United States v. Welden,* 568 F.Supp. 516 (1983), this court held a hearing as to what restitution should be required of defendant Perry Don Allison. The mandate had been withdrawn and the restitution determination stayed as to defendants Edward Eugene Satterfield and Carlton Welden. On motion of Allison, for the reasons discussed with counsel in open court, the hearing was continued to be reset when and if all three defendants can be heard simultaneously on the restitution question.

During the hearing on December 21, 1984, the United States took the position that the only "victim" to be considered for restitution in this case under the Victim and Witness Protection Act, 18 U.S.C. §§ 3579 and 3580, is Paulene Calloway, who was herself kidnapped by the defendants and therefore was clearly a victim of the crime for which the defendants were convicted. It is because the court disagrees with the interpretation which the United States now places on the VWPA that the court writes this opinion and enters the order which accompanies it.

The Court of Appeals in *United States v. Satterfield, supra,* did not question this court's finding that the owner of the kidnap vehicle constitutes a "victim", or this court's finding that the estate of Paulene Calloway's boyfriend, Charles Hill, who was killed during the kidnapping, constitutes a "victim's estate". To the contrary, the Court of Appeals at 743 F.2d at 839, n. 10, recognizes that neither the VWPA nor its legislative history gives any guidance as to who comes within the definition of "victim of the offense" under 18 U.S.C. § 3579(a)(1).

The position now taken by the United States in this case is completely inconsistent with the following clear statements contained in the Guidelines for Victim and Witness Protection promulgated by the Attorney General on July 9, 1983:

These guidelines ... are intended to apply in all cases in which individual *victims are adversely affected by criminal conduct* ... (emphasis supplied).

\*   \*   \*   \*   \*   \*

A "victim" is generally defined as someone who suffers direct or threatened physical, emotional or financial harm *as the result of the commission of a crime.* (emphasis supplied).

\*   \*   \*   \*   \*   \*

It should be noted that, because of the nature of federal criminal cases, *it will be difficult to identify the victim or victims of the offense.* In many cases, *there will be multiple victims.* (emphasis supplied).

\*   \*   \*   \*   \*   \*

Consistent with available resources and their other responsibilities, federal prosecutors should advocate fully the rights of victims on the issue of restitution unless such advocacy would unduly prolong or complicate the sentencing proceeding.

On July 9, 1983, the Attorney General obviously recognized that an important purpose for enacting the VWPA was to expand the rights of victims as well as the definition of victims. If Congress had wanted to keep the narrow definition contained in 18 U.S.C. § 3651, it could easily have done so. Its ostentatious failure to repeat that definition in the VWPA speaks louder than words.

█ The Attorney General and this court are not the only commentators who agree that Congress intended for "victims of the offense" to include all who are hurt as a result of criminal activity which has been clearly demonstrated during a federal criminal trial.

At 93 Yale L.J. 504, 507 (1984) at pp. 509–511, the commentator says:

Under prior federal law, a court could order restitution only as a condition of probation and only "to aggrieved parties

for actual damages or loss caused by the offense for which conviction was had". *The Act expands this authority dramatically by abolishing the probation limitation and by omitting—although without substantial comment—the restrictive "offense of conviction" provision.* (emphasis supplied).

\*　　\*　　\*　　\*　　\*　　\*

Unlike the policies of the Act, the procedures adopted by Congress to advance restitution are unclear because of the ambiguous intent of Congress in omitting the "offense of conviction" language from the new statute. *Under the former statute, the "offense of conviction" provision linked restitution to the technical offense of conviction; the final dismissal of a charge before sentencing eliminated that charge as the basis for restitutionary liability.* (emphasis supplied).

\*　　\*　　\*　　\*　　\*　　\*

These arbitrary exclusions under the former statutes left victims with little or no compensation, despite the conviction of the offender on related charges and despite the willingness of the sentencing court to compensate the victim.

Courts thus face a dilemma in interpreting the Act. If courts abolish the connection between the precise offense of conviction and the restitution order, they will expose defendants to restitutionary liability bearing no relation to the expectations which guided the defendants' defense strategies. The adjudicatory phase would have little meaning in the sentencing phase. But *to perpetuate an unmodified "offense of conviction" constraint will undercut the Act's intent to compensate victims as completely as possible.* An interpretation of the Act is needed which preserves the function of the adjudicatory phase in defining the liability of the defendant while still permitting comprehensive responses to the injuries of victims. (emphasis supplied).

At 70 Va.L.Rev. 1059 (1984), at p. 1061, n. 12, the commentator says *of this case:*

The crime resulted in the death of one *victim,* the sexual abuse of, physical injury to, and possible psychological injury to a second *victim,* and damage to automobile of a third *victim. Welden* 568 F.Supp. at 517. The presentence reports submitted damages totaling $599.00, all to the second *victim,* but failed to mention the other two *victims.* (emphasis supplied).

At 35 Ala.L.Rev. 529 (1984) at p. 529, the commentator says *of this case:*

... the court [in *Welden*] *could have ordered the defendants to make restitution to the woman for any medical expenses and lost wages incurred as a result of her victimization and to the estate of the man for necessary funeral expenses. The Act also empowered the court to require the defendants to reimburse the owner of the getaway car for damage to the car during the crime.* (emphasis supplied).

██ Because the congressional intent mandates a broader definition of "victim" than the United States here urges, because the Attorney General should not retreat from his guideline requirement that "federal prosecutors should advocate fully the rights of victims" and because the federal prosecutors here do not suggest that the sentencing process is being unduly complicated or prolonged, this court finds that the estate of Charles Hill, deceased, constitutes a "victim's estate" in this case within the meaning of "victims" in the VWPA, that Mrs. Derwin Little, the owner of the Chevrolet Malibu which was damaged, constitutes a "victim" within the meaning of the VWPA, and that the court therefore cannot avoid addressing the questions of what restitution to order to these two "victims", as well as to the "victim" Paulene Calloway.

An appropriate separate order will be entered.

### ORDER

In accordance with the Memorandum Opinion simultaneously entered, and pursuant to 18 U.S.C. § 3580(b), the court ORDERS the probation service of this court to

obtain the following information for the court not contained in the present presentence report as to defendant Perry Don Allison:

1. The financial needs and earning ability of the defendant and of the defendant's dependents.

2. The prospects for Paulene Calloway's need for further medical or psychological treatment and rehabilitation, and the anticipated cost of any such treatment and rehabilitation.

3. The income, if any, lost by Paulene Calloway as a result of her injuries and of her attendance upon trial.

4. The difference in fair market value of the Chevrolet Malibu owned by Mrs. Derwin Little before and after a portion of the upholstery was removed from it as evidence, together with the names and addresses of any insurance companies which paid any part of this loss, and the amounts paid.

5. The name, address, and proper designation of the personal representative of the estate of Charles Hill, deceased, and the cost of the necessary funeral and related expenses of Charles Hill, together with the names and addresses of any insurance companies which paid any such expenses or any portion thereof, and the amounts paid.

Because the court does not wish unduly to complicate or to prolong the sentencing process, the court shall expect the probation service to furnish this information to the court and to counsel for Perry Don Allison as expeditiously as possible, in no event later than 30 days from this date.