**YIN-SHING WOO, Appellant,**

v.

**UNITED STATES of America, Appellee.**

No. 262, Docket 26323.

United States Court of Appeals Second Circuit.

Argued Feb. 17, 1961.

Decided March 27, 1961.

Frederick E. Samuel, New York City, for the appellant.

Charles J. Hartenstine, Jr., Morton S. Robson, U. S. Atty. for the S. D. of New York, New York City, for respondent-appellee.

Before CLARK, SMITH and HAND, Circuit Judges.

HAND, Circuit Judge.

This is an appeal from an order of the District Court for the Southern District of New York, Dawson, J., presiding, denying a petition for naturalization filed on January 3, 1956, which came on for hearing on February 4, 1960. The petitioner is a native of China, now 39 years old, who was admitted for permanent residence in this country on October 5, 1948, and has resided here ever since. He was arrested in New York on September 24, 1957, for having failed to answer 23 traffic "tickets" for unlawful "parking"; was sentenced to pay a fine of $345, or to be imprisoned for 46 days; and was released on October 1, 1957, after paying his fine. He says, and apparently the judge believed, that he has served as a translator for the State Department, that he has a law degree from China and has done some graduate work at Columbia University. He has a good knowledge of

English, and offered no excuse for what he had done except that a friend had told him that "summonses" were not "serious." The judge denied the application on the ground that he had not proved that he was "well disposed to the good order and happiness of the United States." This language goes back to 1802 (2 Stat. at L. 153), in a clause that has always provided that the court must "be satisfied that" the applicant "has resided within the United States five years" and that "during that time, he has behaved as a man of a good moral character, attached to the principles of the constitution of the United States, and well disposed to the good order and happiness of the same."

██ It is of course true that repeated and deliberate violation of any ordinance indicates the absence, *pro tanto*, of that obedience to the will of the community that is the duty of all citizens. That would be true, for example, of those regulations now common that provide waste baskets for litter which one must use so as not to clog the pavement or the roadway. A purist may indeed argue that, if clean streets are a part of the "good order" of a city, when anyone deliberately and persistently refuses to use such baskets, it proves that he is not "well disposed to the good order" of the city. However, such a rigid interpretation of the words seems to us unduly to enlarge their proper scope. Like any other statute, this one is to be read with its purposes in mind, which are to admit as citizens only those who are in general accord with the basic principles of the community. Disregard of parking regulations, even when repeated as often as this was, is not inimical to its "good order," so construed. It would be otherwise, if the result of the violation defeated a cardinal purpose of the Naturalization Law itself, such as the surveillance of immigrants who seek to enter. That was true in Re Nybo, 6 Cir., 42 F.2d 727, and United States v. Clifford, 2 Cir., 89 F.2d 184, in both of which the alien sought to smuggle in another alien who was concededly not entitled to enter.

██ We should of course yield to the text, when the text is plain, but "good order" is a word of vague content; particularly when used as an alternate to "good moral character." If it be answered that this bases our construction on our personal judgment of the public importance of the conduct involved, we agree. Not infrequently a legislature means to leave to the judges the appraisal of some of the values at stake. For example, those rights, criminal and civil, that are measured by what is "reasonable," really grant to courts such a "legislative" power, although we call the issues questions of fact. They require of the judges the compromise that they think in accord with the general purposes of the measure as the community would understand it. We are of course aware of the resulting uncertainties involved in such an interpretation; but the alternative would be specifically to provide for each situation that can arise, a substitute utterly impractical in operation. We can say no more than that we think it plain that this statute did not mean to make naturalization depend upon obedience to such a regulation as that before us. We call this function "interpretation," so long as the scope of the appraisal and choice is not too wide; although when it is too wide, we call the statute invalid, as a "delegation" of legislative power. In the case at bar we hold that disobedience to the parking regulations of a great city, even though repeated and deliberate, does not show a disposition contrary to the "good order" of the United States; and was a permissible delegation of power.

The judge added in his opinion some comment upon the applicant's financial dealings with other Chinese residents, which seems to indicate that he did not approve them. We have not discussed this aspect of the evidence because neither party has raised the point, and the judge did not base his decision upon it.

Order reversed; petition granted.