**UNITED STATES of America, Plaintiff-Appellee,**

v.

**James Michael BAKER, Defendant-Appellant.**

**No. 17461.**

United States Court of Appeals, Seventh Circuit.

July 13, 1970.

Dolores V. Horan, Chicago, Ill., for defendant-appellant.

Frank J. Violanti, U. S. Atty., Springfield, Ill., Max J. Lipkin, Peoria, Ill., for plaintiff-appellee.

Before CASTLE, Senior Circuit Judge, and KILEY and CUMMINGS, Circuit Judges.

CUMMINGS, Circuit Judge.

In July 1968, defendant was indicted for transporting a Chevrolet coupe from Newark, Delaware, to Rock Island, Illinois, in violation of the Dyer Act (18 U.S.C. § 2312).[1] When he was arraigned, the district court appointed counsel and defendant pled not guilty. On October 11, 1968, he substituted a guilty plea which was accepted. The judge then inquired whether he could proceed with sentencing, and defense counsel assented. Defendant then moved for probation. After hearing argument of counsel, the sentencing judge denied the motion for probation. Instead, he remanded defendant for observation and study under the Youth Corrections Act pursuant to 18 U.S.C. § 5010(e).[2] De-

1. Section 2312 of Title 18 states that:
    "Whoever transports in interstate or foreign commerce a motor vehicle or aircraft, knowing the same to have been stolen, shall be fined not more than $5,000 or imprisoned not more than five years, or both."

2. The sentencing provisions of the Youth Corrections Act are set forth in 18 U. S.C. § 5010 and provide:
    "(a) If the court is of the opinion that the youth offender does not need commitment, it may suspend the imposition or execution of sentence and place the youth offender on probation.
    "(b) If the court shall find that a convicted person is a youth offender, and the offense is punishable by imprisonment under applicable provisions of law other than this subsection, the court may, in lieu of the penalty of imprisonment otherwise provided by law, sentence the youth offender to the custody of the Attorney General for treatment and supervision pursuant to this chapter until discharged by the Division as provided in section 5017(c) of this chapter; or

    "(c) If the court shall find that the youth offender may not be able to derive maximum benefit from treatment by the Division prior to the expiration of six years from the date of conviction it may, in lieu of the penalty of imprisonment otherwise provided by law, sentence the youth offender to the custody of the Attorney General for treatment and supervision pursuant to this chapter for any further period that may be authorized by law for the offense or offenses of which he stands convicted or until discharged by the Division as provided in section 5017(d) of this chapter.
    "(d) If the court shall find that the youth offender will not derive benefit from treatment under subsection (b) or (c), then the court may sentence the youth offender under any other applicable penalty provision.
    "(e) If the court desires additional information as to whether a youth offender will derive benefit from treatment under subsections (b) or (c) it may order that he be committed to the custody of the Attorney General for observation and study at an appropri-

fendant was then taken under custody of the Attorney General and transferred to the classification center at the El Reno, Oklahoma, reformatory.

The case came up for final sentencing on January 14, 1969, at which time defense counsel presented defendant's father who testified that he would welcome his son home and help him rehabilitate himself, should the court so order. The initial motion for probation was not specifically renewed, and the evidence was offered "to show if you do grant probation he has a place to go." Thereafter, defendant was granted the opportunity to speak, and the court proceeded to the matter of sentencing.

Relying upon the recommendations of the Youth Correction Division, sentence was imposed in accordance with the provisions of 18 U.S.C. § 5010(b). The judge pointed out specifically that the report "does not recommend that this man in his present mental attitude, as they view it, be placed on probation at this time." The judge was quite candid in his reasons for confining defendant, and at no time was any request made for the disclosure of either the presentence report prepared by the probation officer, or the confidential report made while defendant was under observation at El Reno.

### Constitutionality of Dyer Act

Defendant has attacked the constitutional validity of several statutes involved in this case. Initially, he contends that the Dyer Act is void for vagueness due to the unclarity of the statutory term "stolen." This contention was, however, authoritatively resolved in United States v̇. Turley, 352 U.S. 407, 417, 77 S.Ct. 397, 402, 1 L.Ed. 2d 430, where the Court concluded that

"the Act requires an interpretation of 'stolen' which does not limit it to situations which at common law would be considered larceny. The refinements of that crime are not related to the primary congressional purpose of eliminating the interstate traffic in unlawfully obtained motor vehicles. The Government's interpretation is neither unclear nor vague. 'Stolen' as used in 18 U.S.C. § 2312 includes all felonious takings of motor vehicles with intent to deprive the owner of the rights and benefits of ownership, regardless of whether or not the theft constitutes common-law larceny."

Having been shown nothing to cast doubt upon the continued vitality of that decision, we reject the instant challenge, as did the Ninth Circuit. Girton v. United States, 383 F.2d 404 (9th Cir. 1967). Under *Turley*, it is clear that the Dyer Act covers rented automobiles converted to the lessee's own use. United States v. Meek, 388 F.2d 936, 938 (7th Cir. 1968); see also United States v. Gunter, 393 F.2d 511 (7th Cir. 1968).

### Constitutionality of Probation and Sentencing Statutes

Failing total escape from criminal liability, defendant next challenges the constitutionality of the Probation Act (18 U.S.C. § 3651 et seq.) and the Federal Youth Corrections Act (18 U.S.C. § 5005 et seq.)[3] He argues that the statutes contain such vague standards that the district courts' exercise of their delegated powers is meaningless and unreviewable on appeal. These delegations, he urges, should be stricken as unconstitutional abdications of the congressional obligation to set standards and specify policies capable of administration by the federal courts.

ate classification center or agency. Within sixty days from the date of the order, or such additional period as the court may grant, the Division shall report to the court its findings."

3. It should be noted that defendant is challenging the constitutionality of stat-

utes which empower courts to exempt certain defenders from otherwise onerous punishment. Anomalously, should defendant prevail in his constitutional challenge to the Probation and Youth Corrections Acts, his victory would indeed be a pyrrhic one, for he would have succeeded only in eliminating avenues of leniency.

■ The validity of delegations of discretionary powers does not rest merely upon the enumeration of precise standards or specific guiding factors. In Lichter v. United States, 334 U.S. 742, 785, 68 S.Ct. 1294, 1316, 92 L.Ed. 1694, the Court noted that the necessary power to delegate sufficient authority to effectuate congressional purposes may demand the grant of broad discretions to administrative agencies:

"It is not necessary that Congress supply administrative officials with a specific formula for their guidance in a field where flexibility and the adaptation of the congressional policy to infinitely variable conditions constitutes the essence of the program. 'If Congress shall lay down by legislative act an intelligible principle * * * such legislative action is not a forbidden delegation of legislative power.' Hampton, Jr. & Co. v. United States, 276 U.S. 394, 409, 48 S.Ct. 348, 352, 72 L.Ed. 624. Standards prescribed by Congress are to be read in light of the conditions to which they are to be applied. 'They derive much meaningful content from the purpose of the Act, its factual background and the statutory context in which they appear.' American Power & Light Co. v. S.E.C., 329 U.S. 90, 104, 67 S.Ct. 133, 91 L.Ed. 103."

■ Even greater latitude must be recognized where Congress grants broad discretionary powers to courts, for the constitutional and functional role of courts necessarily requires the frequent application of judgment in the exercise of discretion. As Judge Learned Hand observed:

"Not infrequently a legislature means to leave to the judges the appraisal of some of the values at stake * * *. They require of the judges the compromise that they think in accord with the general purposes of the measure as the community would understand it. We are of course aware of the resulting uncertainties involved in such an interpretation; but the alternative would be specifically to provide for each situation that can arise, a substitute utterly impractical in operation." Yin-Shing Woo v. United States, 288 F.2d 434, 435 (2d Cir. 1961); cf. United States v. Ragen, 314 U.S. 513, 523–524, 62 S.Ct. 374, 86 L.Ed. 383.

■ The statutory provisions governing probation and the treatment of youth offenders must be considered in light of the alternatives provided by Congress and the ultimate goals of rehabilitation and deterrence of subsequent criminal conduct. The current statutory scheme places in the hands of the courts, particularly the sentencing judge, the responsibility for balancing the competing interests of society and the individual offender, and determining which mode of correction will best accomplish the objectives of the Acts. With the aid of supporting personnel, the judge must make subtle and often quite subjective determinations concerning the character of the offender. He must make complex predictions as to the response to any given form of treatment which may be expected. He must weigh these imponderables and render a judgment. Congress clearly felt that the broad discretion thus vested in the sentencing judge was integral to the effective disposition of the post-conviction treatment of offenders. In these Acts, Congress has expressed its policy behind the sentencing scheme and the basic values to be considered. We cannot say that the Constitution demands more.[4] Cf., e. g., United Steelworkers of America v. United States, 361 U.S. 39, 80 S.Ct. 1, 4 L. Ed.2d 12; Briggs v. United States, 96 U.S.App.D.C. 392, 226 F.2d 350, 352 (1955); Yin-Shing Woo v. United States, 288 F.2d 434 (2d Cir. 1961); Sam v. United States, 385 F.2d 213, 215 (10th Cir. 1967).

4. Earlier attacks on the constitutionality of both Acts failed. Nix v. James, 7 F.2d 590, 593 (9th Cir. 1925); Cunningham v. United States, 256 F.2d 467, 472–473 (5th Cir. 1958).

*Validity of Sentence*

Finally, defendant attacks his incarceration on the grounds that the procedures employed by the sentencing judge violated due process of law, and that the court abused its discretion in denying probation.

██ Contrary to the assertions of defendant, however, we find no denial of due process in either of the hearings held by the court below. Defendant was never prevented from presenting evidence or arguing the merits of his motion for probation. At the hearings both Baker and his attorney had ample opportunity to debate the merits of the sentence with the judge.

██ Likewise, we cannot accept the contention that the sentence improperly rested upon secret reports which should have been disclosed to defendant. Although the existence of both reports was known to defendant, no request was made for the disclosure of the specific contents of either item. The judge was quite candid concerning the substance of the reports, and there is no indication from the record that the reports contained material which was unknown to defendant.[5] We need not explore the contingencies and hypothetical abuses of discretion where, as here, no request was ever made for disclosure, in any form or to any degree, of the contents of the various reports. Cf. State v. Kunz, 55 N.J. 128, 259 A.2d 895 (1969). Certainly we will not require *sua sponte* action of that nature by the court on this record.

██ Nor, finally, do we see any merit in the contention that the sentencing judge in any way abused his discretion in confining Baker to treatment. There is no indication that the judge relied upon an improper factor in reaching his conclusions (cf. United States v. Wiley, 278 F.2d 500, 502, 503 (7th Cir. 1960)) or that the sentence imposed was arbitrary or capricious. Defendant's June 22, 1968, statement to the FBI (an exhibit to his brief here) highlights the judge's leniency.

The Court is grateful to Mrs. Dolores Horan of the Chicago Bar for her dedicated services as court-appointed counsel on this appeal.

The judgment is affirmed.

---

5. In fact, the judge himself suggested that the presentence report considered at the first hearing might contain matters not known to defense counsel. No response to that statement was made. None of the matters referred to by the court appeared to catch defendant by surprise, and we see no reason to conclude that defendant was unaware of the fundamental contents of the report. Likewise, defense counsel had received his own report from defendant's supervisor in the Youth Correction Division in El Reno before the second hearing.