**UNITED STATES of America,**

v.

**Thomas J. CIAMBRONE, Jr., Jerry A. Chambrone, and Joseph Vincent Riggio, Jr.,**

No. SS 83 Cr. 716 (RLC).

United States District Court, S.D. New York.

Dec. 5, 1984.

564

Rudolph W. Giuliani, U.S. Atty., S.D.
N.Y., New York City, for the United States

of America; Anne C. Ryan, Asst. U.S. Atty., New York City, of counsel.

Stillman, Friedman & Shaw, P.C., New York City, for defendant Thomas J. Ciambrone, Jr.; Charles A. Stillman, Daniel E. Casagrande, Mary C. Kennedy, New York City, of counsel.

## OPINION

ROBERT L. CARTER, District Judge.

On April 16, 1984, a jury convicted Thomas Ciambrone, Jr. and Jerry Chambrone of conspiracy and various counts of racketeering. 18 U.S.C. §§ 1951 and 1952. The government has moved for an order of restitution pursuant to the Victim and Witness Protection Act of 1982, 18 U.S.C. §§ 3579 and 3580 ("the Act"), which requires the court, as part of the sentence of each defendant, to order that he make restitution to each victim. If the court does not order restitution, it must state on the record its reasons for not doing so. Both defendants oppose the government's motion on the grounds that the Act violates the 5th, 7th and 8th amendments of the Constitution.

At the time defendants filed their memoranda challenging the Act's validity, only one court had considered directly this constitutional · challenge. *United States v. Welden*, 568 F.Supp. 516 (N.D.Ala.1983), held that the Act violated the 7th, 5th and 14th amendments. Since the submission of this matter to the court, however, *Welden* has been reversed, *sub nom. United States v. Satterfield*, 743 F.2d 827 (11th Cir.1984), and the Second Circuit has handed down *United States v. Brown*, 744 F.2d 905 (2d Cir.1984) giving "unqualified approval to Congress' determination that victim restitution should be added to the sentencing options of federal judges." Id. at 912. Following the two circuit court decisions, the court finds that the Act's imperfections do not rise to the level of constitutional transgressions.

Nevertheless, for the reasons set out in the second portion of this opinion, an order of restitution will not issue on the present record before the court. Consistent with the provisions of the Act, the court finds a hearing is required on material questions of fact raised by defendants. The issues to be addressed at the hearing are defined below.

### Constitutional Challenge

*Due Process*

Defendants attack the Act's failure to detail the procedures to be followed in making an order of restitution. They maintain that the Act's vague provisions "open a Pandora's box of constitutional and practical problems in applying the statute," echoing the sweeping attack leveled by the district court in *Welden*. The *Welden* district court criticized Congress for granting "too much discretion to the courts and to the Attorney General ... creat[ing] a potential Frankenstein." 568 F.Supp. at 534. Because, the court found, the restitution order was *res judicata* and collectible as other civil judgments, procedural safeguards additional to those recognized in §§ 3579 and 3580 were necessary. Unlike 18 U.S.C. § 3651, which allows restitution as a condition of probation, Judge Acker concluded that these sections were not "fair" or "reasonable" in authorizing a civil judgment against a person on the hearsay testimony of a witness without any discovery and without cross-examination. *Id.* at 535.

Defendants also press the equal protection argument raised by the *Welden* district court. The court found that there was a high probability that disparate results would obtain from the application of §§ 3579 and 3580. 568 F.Supp. at 535. Specifically, defendants fault the Act for failing to specify the relative importance of the factors to be considered in determining whether to order restitution, and for failing to provide for the apportionment of restitution among defendants based on their relative culpability.

■ As a general comment, there is no doubt that §§ 3579 and 3580 are not among the more well-crafted bits of legislation to issue forth in recent years. Speed rather

than care in construction seemed the Congress' dominant concern in passing the Act; President Reagan signed the Act into law on October 12, 1982, less than two months after it left Committee in the Senate.[1] But, in evaluating the charges that too many discretionary loopholes were left in the Act, as well as defendants' other constitutional attacks, the court must examine whether the Act can be construed so as to pass constitutional muster. *See Village of Hoffman Estate v. Flipside, Hoffman Estate,* 455 U.S. 489, 494 n. 5, 102 S.Ct. 1186, 1191 n. 5, 71 L.Ed.2d 362 (1982) citing *Steffel v. Thompson,* 415 U.S. 454, 474, 94 S.Ct. 1209, 1223, 39 L.Ed.2d 505 (1974) (law is facially unconstitutional only if incapable of valid application); *International Ass'n of Machinists v. Street,* 367 U.S. 740, 749, 81 S.Ct. 1784, 1789, 6 L.Ed.2d 1141 (1961) (federal statutes are to be so construed as to avoid serious doubt of their constitutionality). There are enough limiting provisions in the Act which place it within constitutional bounds, especially if these are considered in light of the Act's legislative history and judicial constructions of 18 U.S.C. § 3651.

■ The Act does not leave a void with respect to procedural guidelines for ordering restitution. Although the Act may be characterized as "procedurally conservative," [2] it clearly directs the court to follow certain steps in deciding the propriety and amount of a restitution order. Section 3580(a) prescribes that "the court ... shall consider the amount of the loss sustained by any victim as a result of the offense, the financial resources of the defendant, the financial needs and earning ability of the defendant and the defendant's dependents, and such other factors as the court deems

appropriate." The section need not provide detailed guidance as to the relative importance of each factor. All forms of sentencing require the court to take account of a variety of considerations about the defendant, including his background and financial situation without attaching specific weight to each piece of information.[3] The factors listed in the Act adequately define parameters of uniformity without infringing upon the individualized nature of the sentencing process. *See Roberts v. United States,* 445 U.S. 552, 556, 100 S.Ct. 1358, 1362, 63 L.Ed.2d 622 (1980). As the government points out, it is the invidious exercise of discretion against which the court must guard, not the exercise of discretion *per se. United States v. Batchelder,* 442 U.S. 114, 124–25, n. 9, 99 S.Ct. 2198, 2204–05, n. 9, 60 L.Ed.2d 755 (1979).

Moreover, the Act provides a check on the accuracy of the material presented to the court. *See Townsend v. Burke,* 334 U.S. 736, 68 S.Ct. 1252, 92 L.Ed. 1690 (1948). The court must, pursuant to § 3580(c), disclose to both the defendant and the government all portions of the presentence or other report pertaining to the background factors described above. The defendant, as well as the government, thus are afforded the opportunity to refute or supplement the information on which the court will rely in making a restitution determination. In addition, Rule 32(a)(1)(C), F.R.Cr.P. gives the defendant the opportunity "to make a statement in his own behalf and to present any information in mitigation of punishment." *See Satterfield, supra,* 743 F.2d at 839–41.[4]

The Act also addresses the standard and burdens of proof in a determination of restitution. § 3580(d). The Act provides that

---

1. *See* Note, *Restitution in the Criminal Process: Procedures for Fixing the Offender's Liability,* 93 Yale L.J. 505, 505 n. 2 (1984).

2. Note, *supra* note 1, at 508 n. 13 (act requires that basic principles of victim-oriented restitution be served without "unduly complicat[ing] or prolong[ing] the sentencing." 18 U.S.C. § 3579(d) (1982)). *See also* S.Rep. No. 532, 97th Cong., 2d Sess. 31 *reprinted in* 1982 U.S.Code Cong. & Ad.News, 2515, 2537.

3. *See* Note, *Victim Restitution in the Criminal Process: A Procedural Analysis,* 97 Harv.L.Rev. 931, 942 (1984).

4. Although the Act does not mandate that a hearing be held, a hearing is entirely consistent with the Act's provisions, *see* 18 U.S.C. § 3580(d) and Note, *supra,* note 3, at 945.

the burden of proving, by a preponderance of the evidence, the amount of loss sustained by the victim is on the government,[5] while the burden of demonstrating, by the same standard, the financial resources of the defendant rests with the defendant. This distribution accords with general notions of justice. The burden is placed on the proponent of a motion, *see United States v. Veon*, 538 F.Supp. 237, 245–46 (E.D.Cal.1982), and on the party to whom pertinent information is much more readily available. *See Communist Party of United States v. United States*, 331 F.2d 807 (D.C.Cir.1963). It would not seem difficult for the court to assign similarly the burden of proof on other issues that might arise, as the Act provides, § 3580(d), and, therefore, it is not fatal that the Act does not spell out all possible allocations.

■ The Act's so-called *"res judicata"* provision does not persuade the court that a full-scale trial, with attendant formal evidentiary and discovery rules is needed. The Act provides that "[a] conviction of a defendant for an offense involving the act giving rise to restitution ... shall estop the defendant from denying the essential allegations of that offense in any subsequent Federal civil proceeding or State civil proceeding ... brought by the victim." § 3580(e). The Committee's stated intention in enacting this provision was to "obviate a victim's need to establish a defendant's liability in a civil suit for punitive and/or compensatory damages." S.Rep. No. 532, 97th Cong., 2 Sess. 32, *reprinted in* 1982 U.S.Code Cong. and Ad.News, p. 2515, 2538. Thus, the Act emphasized the effect to be given to the conviction underlying the restitution order, but it did not, as Judge Acker, the District Judge in *Welden* implied, give additional effect to the restitution order itself. *Satterfield, supra,* 743 F.2d at 838.

■ In any event, the provision was not a necessary step in achieving the Committee's goal. Criminal convictions operate as collateral estoppel in favor of a plaintiff in a civil suit against the same defendants. *United States v. Podell*, 572 F.2d 31, 35 (2d Cir.1978). The impact of this provision does not, therefore, escalate the process due in restitution determinations.

■ The Act's standards are also sufficient to assure that defendants' equal protection rights will not be infringed even though it does not specifically direct the apportionment of restitution among multiple defendants. *See Williams v. Illinois*, 399 U.S. 235, 243, 90 S.Ct. 2018, 2023, 26 L.Ed.2d 586 (1970) (disparate sentencing of two persons convicted of the same crime does not necessarily violate equal protection); *United States v. Wyzynski*, 581 F.Supp. 1550, 1551 (E.D.Pa.1984) ("appropriate restitution does not involve a comparison between [defendants] and their relative culpability, but involves the law's policy, as recently stated by Congress, 'to ensure that the Federal Government does all that is possible within limits of available resources to assist victims' of crime") (citations omitted). Section 3580(a) sets out the factors a court is to take into account in fixing an appropriate amount of restitution. When a court properly exercises its discretion within the parameters set by § 3580(a), there is no violation of equal protection. *Satterfield, supra,* 743 F.2d at 841–42. In sum, the Act incorporates sufficient procedural protections to avoid infringing a defendant's due process or equal protection rights, and the court finds it neither unfair nor unreasonable. *United States v. Brown, supra.*

### Right to trial by jury

■ Defendants argue, again tracking Judge Acker's opinion, that the Act violates defendants' seventh amendment rights by denying defendants the opportunity for a jury trial. They maintain that a restitution order is indistinguishable from a civil judgment, to which the right to trial by jury attaches where the value in controversy

5. The court does not attach significance to the statute's wording which places the burden on "the attorney for the government," 18 U.S.C. § 3580(d).

exceeds twenty dollars, as it does here. The court cannot agree.

It is clear that Congress intended victim restitution to be a criminal, not a civil penalty. The Act considers restitution part of the defendant's "sentencing"—a feature of criminal, not civil proceedings. Under § 3580(a), the sentencing court can order restitution only after taking into account the financial resources of the defendant, his earning ability and the financial needs of his dependents—considerations generally not relevant to the amount of damages awarded in a civil case. The legislative history also reflects Congress' intent that restitution be a criminal penalty. For example, while Congress was considering the Act, Rep. McCollum noted that under the Act "[r]estitution would become a sentence that could, in and of itself, be imposed.... This legislation does not intend that restitution become a substitute for civil damages...." 128 Cong.Rec. H8467 (daily ed. Oct. 1, 1982). *Satterfield, supra,* 743 F.2d at 836–37. There is no constitutional requirement that a jury determine any aspect of a criminal penalty. *United States v. Brown, supra* at 908.

It is true that a restitution order has some of the characteristics of a civil judgment—it is compensatory, and enforceable at civil law. However, "these characteristics do not transform a criminal sentence into a civil adjudication requiring fact-finding by a jury." *Id.* Though restitution may serve some of the same functions of a civil judgment, it also achieves the traditional purposes of punishment—it can deter potential offenders, serves society's legitimate interest in peaceful retribution, and can be a useful step toward rehabilitation. "So long as the restitution provision is a permissible form of punishment, it is not subject to civil requirements simply because it also achieves some of the purposes of a civil judgment." *Id.* at 909–10.

Moreover, restitution has been imposed as a condition of probation under 18 U.S.C. § 3651 in scores of cases in recognition of the fact that it is an integral part of a criminal case—part of the sentencing

court's discretion—not a separate civil proceeding. *See, e.g., Fiore v. United States,* 696 F.2d 205 (2d Cir.1982) and cases cited therein; *United States v. Berger,* 145 F.2d 888 (2d Cir.1944), *cert. denied,* 324 U.S. 848, 65 S.Ct. 685, 89 L.Ed. 1408 (1945). Sections 3579 and 3580 granting the court authority to order a convicted defendant to make restitution independent of whether the defendant is placed on probation do not transform restitution into a civil judgment.

Nor does the availability under § 3579(h) of a civil mechanism to enforce a restitution order transform the criminal sentencing hearing into a civil trial to which the right to a jury would apply. This enforcement provision was enacted to "increase [ ] the victim's chances of collecting restitution," S.Rep. No. 532, 97th Cong., 2d Sess. 32, *reprinted in* 1982 U.S.Code Cong. and Ad.News 2515, 2539, and parallels existing law for the collection of fines by the government. 18 U.S.C. § 3565 (fine "may be enforced by execution against the property of the defendant in like manner as judgments in civil cases"). The act "merely extends this right to the victims themselves." *Satterfield, supra,* 743 F.2d at 838–39. *See also United States v. Brown, supra* at 910–11.

*Cruel and Unusual Punishment*

■ Finally, defendants argue that because the Act authorizes revocation of probation or parole if restitution obligations are not met, 18 U.S.C. § 3579(g), they face the prospect of being imprisoned for failure to pay a debt in violation of the eighth amendment's prohibition against cruel and unusual punishment. Before this sanction may be imposed, however, certain factors must be taken into account. Specified for consideration are defendants' "employment status, earning ability, financial resources, the willfulness of the defendant's failure to pay, and any other special circumstances that may have a bearing on the defendant's ability to pay." *Id.* Defendants submit that the recitation of these "vague factors" are, nevertheless, insufficient to avoid the Act's collision with the Supreme Court's proscriptions in *Bearden v. Georgia,* 461

U.S. 660, 103 S.Ct. 2064, 76 L.Ed.2d 221 (1983). The Court held there that a state defendant's probation could not be revoked for failure to pay a fine in the absence of a determination by the court that he had not made "bona fide efforts" to pay, or that adequate alternative forms of punishment did not exist to meet the state's interest in punishment and deterrence. *Id.* at 2074. While Congress obviously failed to anticipate the precise langauge of the *Bearden* opinion, it came sufficiently close to avoid a constitutional problem on eighth amendment grounds.

Congress clearly provided that matters surrounding a defendant's ability to pay the amount due, as well as in particular the defendant's willfulness in not paying that amount, play important roles in a court's decision as to whether defendant's probation or parole should be revoked. It is difficult to imagine that a court's consideration of these factors would exclude the bona fides of the defendant's efforts to meet his or her restitution obligations. Moreover, the Act's list of factors relevant to the revocation decision is not exclusive and, in light of the *Bearden* decision, it is apparent that courts should consider, prior to imposing a prison sentence for failure to comply with a restitution order, whether alternative forms of punishment are available. As even Judge Acker concluded, it is possible to construe the Act so that it passes muster under the 8th amendment. *United States v. Welden, supra,* 568 F.Supp. at 533.

Defendants' constitutional challenges are rejected and the court finds the Act constitutional.

*Factual Questions on the Amount of Restitution*

Despite the court's finding that the Act withstands constitutional scrutiny, it is not possible to decide at this point what amount, if any, defendants should be required to pay. Defendants have come forward with substantial factual questions as to whether the "losses" claimed by Computer Sciences Corporation ("CSC") are to be considered losses "sustained by ... [a]

victim as a result of the offense," 18 U.S.C. § 3580(a).

The government claims that CSC suffered damages in the amount of $157,970.09. A substantial portion of that figure is attributed to payment of security (investigative and surveillance) personnel and purchase of security equipment ($132,371.25). The remainder is catalogued as expenditures in relocating Brison Weeks, a CSC employee whose car was fire-bombed, (including travel and out-of-pocket expenses) and for payment (business/travel and out-of-pocket expenses) of Fred Matsuyama, the CSC supervisor assigned to the White Plains Data Center to coordinate and control the security and legal problems which allegedly arose in June and July of 1983. The affidavit of Matsuyama states that all of the expenses "were incurred as a direct result of the firebombing of Weeks' car in an effort to protect CSC employees from any further violence and to prevent any additional incidents of CSC premises." (Aff. at ¶ 9).

Defendants suggest, however, that CSC's hiring of security personnel stemmed from CSC's desire to find reasons to terminate its contract with T.J. Associates, Ciambrone's firm, citing a confidential report to CSC which indicated that one reason Burns International Security Services, Inc., and investigative agency, was hired by CSC was "to disclose reasons for CSC to terminate T.J. Associates contract with cause." (Exhibit A, defendants' memorandum). Moreover, defendants allege that Weeks would have been relocated in any event since CSC was planning to and did eventually sell its White Plains division to another company in the fall of 1983. Finally, defendants argue, the "security" expenditures made by CSC were "wholly voluntary", which excludes them from the class of damages traditionally included in restitution orders.

The premise behind the Act's restitution provisions is that measures were required to insure "that the wrongdoer made goods [sic], to the degree possible, the harm he has caused his victim." S.Rep.

No. 532, 97th Cong., 2d Sess. 32, *reprinted in* 1982 U.S.Code Cong. and Ad.News, 2515, 2536.[6] Congress provided that, in the case of property loss, the property be returned or the value of the property be repaid. 18 U.S.C. § 3579(b)(1)(A), (B). Members of Congress indicated in discussion that restitution was to be limited to the victim's readily identifiable expenses, not to damages which are difficult to calculate. 128 Cong.Rec. H8207 (daily ed. Sept. 30, 1982) (statement of Rep. McCollum). The order of restitution was to be "as fair as possible to the victim," but restitution was not intended to unduly complicate the sentencing process. 18 U.S.C. § 3579(d).

Despite the Congress' victim-orientation in passing the Act, it did not contemplate that all possible financial consequences of a defendant's acts would be covered by a restitution order. Causal connections are not always neatly drawn, but it seems apparent from the Act's mandates that the government must show that the expenses claimed resulted directly from defendants' actions. *Cf. United States v. Tiler*, 602 F.2d 30 (2d Cir.1979) (restitution may be ordered as a condition of probation only for actual damages flowing from specific crime charged of which defendant is convicted). As a practical matter, to the extent that CSC's expenditures relate more to independent and pre-existing business concerns, and less to safety and security measures necessitated by the firebombing incident, the appropriateness of a restitution award, and its amount, are proportionately diminished.

■ The court does not find it possible to determine, from the itemized lists submitted by the government on CSC's behalf, whether the expenses claimed by CSC are within the scope of a restitution order pursuant to the Act.[7] Moreover, as defendants assert, such factual questions cannot be decided fairly without a hearing in which the court can explore more fully the purpose and character of CSC's reported costs. The risk of error in not holding such a hearing, which, despite its informal nature, affords defendants the opportunity to confront the government directly, is greater than whatever burden the hearing may impose. *See* Note, *Victim Restitution in the Criminal Process: A Procedural Analysis, supra* n. 3, 97 Harv.L.R. at 945–56. The parties are, of course, bound to proceed with great deference to the statute's admonition against allowing restitution to inject unwarranted complexity into the sentencing process. 18 U.S.C. § 3579(d).

The court also finds that a hearing is necessitated by defendants' contentions that their financial resources do not reasonably permit them to make the requested restitution payments. The government contests the financial information which they have submitted. The court is again unable to resolve this dispute on the papers presented and is again moved by due process considerations to order a hearing on the issue.

*Conclusion*

■ At such a hearing to be scheduled at a time permitted by the court's calendar and the convenience of counsel, the government must come forward with evidence on the nature of CSC's expenditures demonstrating that they resulted from the actions for which defendants were convicted. The burden of proof is on defendants to show their inability to meet any additional financial obligations, but because the government contests the information presented to the court by defendants, it must be prepar-

---

**6.** In describing the problems of current law, the Committee wrote,

Crime victims and their advocates have called on state legislators to restore restitution to its proper place in the criminal law. They point out that the average dollar losses victims suffer total hundreds of dollars, not thousands, and that most ex-offenders, not just those on probation, have some means to undo the financial harm they have done. There is no reason to believe that victims of federal crimes do not have the same grievances. S.Rep. No. 532, 97th Cong., 2d Sess. 30 *reprinted in* 1982 U.S.Code Cong. & Ad.News 2515, 2536.

**7.** It is clear that the expenses claimed by Donald Miller, whose house was firebombed, are damages flowing from defendants' acts.

ed at the hearing to elaborate the basis on which it challenges reports of defendants' financial status.

It should be added parenthetically that the court realizes that the parties desired to submit the matter to court on papers without resort to a hearing. The matter was accepted by the court on that basis. However, after full consideration of the documents and memoranda presented by the parties, the court does not feel competent to make a fair and rational determination of the matter without a hearing.

IT IS SO ORDERED.