**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Jimmy Dale GOMER,
Defendant-Appellant.**

**No. 84–1463.**

United States Court of Appeals,
Seventh Circuit.

Argued Dec. 5, 1984.

Decided June 11, 1985.

Coffey, Circuit Judge, filed a dissenting opinion.

David Resley, Asst. U.S. Atty., Gregory Harris, U.S. Atty., Springfield, Ill., for plaintiff-appellee.

Gregory Dean Collins, Stratton & Nardulli, Springfield, Ill., for defendant-appellant.

Before ESCHBACH and COFFEY, Circuit Judges, and SWYGERT, Senior Circuit Judge.

SWYGERT, Senior Circuit Judge.

Jimmy Dale Gomer pled guilty to bank robbery and was sentenced to twenty-five years imprisonment and ordered to forfeit $7,272.00 as restitution to the victims of the robberies, pursuant to the Victim and Witness Protection Act of 1982, 18 U.S.C. §§ 1512–14, 3579–80 (1982) ("VWPA"). He appeals only from the restitution sentence. Because the VWPA requires the sentencing judge to consider "the financial needs and earning ability of the ... defendant's dependents," 18 U.S.C. § 3580(a), we vacate the restitution sentence and remand for resentencing in light of this consideration.

At the sentencing hearing, the district judge stated that a restitution award was "fairly mandatory" under the VWPA and that he could find no "valid or sufficient reason not to order restitution." Transcript of Proceedings, Vol. A at 3 ("TA."). Gomer personally objected to forfeiting the $7,272.00 seized from him, contending that these funds were not the proceeds of the robberies. He claimed that the funds accrued from the sale of his wife's car and

from money he had saved while in prison. TA. 3. The district judge reasoned that the source of the funds was irrelevant, and Gomer's counsel agreed. TA. 4–5. Counsel objected to the restitution award only on the ground that the statute itself was unconstitutional. TA. 11. The district judge ordered the $7,272.00 forfeited as restitution without any findings or further explanation for the basis of the award, other than his determination to "follow the mandate of Congress." TA. 11.

▪ On appeal Gomer contends for the first time that the VWPA requires the sentencing judge to consider the financial needs and earning ability of the defendant's dependents. Appellant's Brief at 22.[1] We hold that the district judge erred in failing to consider this factor and that this was plain error that may be noticed by the appellate court even though not raised below. Fed.R.Crim.P. 52(b).

The VWPA expressly requires the sentencing judge to consider "the financial needs and earning ability of the ... defendant's dependents." 18 U.S.C. § 3580(a). The sentencing judge here did not state on the record that he considered this factor. No error was committed, however, if (1) the issue was not properly before the court, (2) the judge implicitly considered this factor in ordering restitution, or (3) the funds in fact were the proceeds of the bank robbery.

▪ The VWPA places on the defendant the burden of demonstrating the financial needs of his dependents. 18 U.S.C. § 3580(d). Therefore, if the defendant did not at least produce some evidence on this issue, the issue was not properly before the district judge, and the latter did not err in

---

1. In an apparent attempt to circumvent the waiver problem, Gomer purports to frame the issue as a constitutional one. He argues that the due process clause requires the government to follow the procedures it sets for itself by statute. Appellant's Brief at 22. At oral argument, however, Gomer also framed the issue in statutory terms. The appellee interpreted the issue as a statutory one. See Appellee's Brief at 30–33. In view of the lack of prejudice to the appellee and in view of our reluctance to reach constitutional issues unnecessarily, see infra note 8, we hold that Gomer has stated a statutory claim and address it before reaching any constitutional issues.

failing to consider it.[2] It is true that Gomer himself presented no evidence on this issue.[3] Nevertheless, the record contained ample evidence [4] of the financial dependency of family members on Gomer. According to the two presentence reports presented to the judge, *see* Appellee's Appendix, Gomer had been married three times and had had four children by his first marriage. The two eldest sons, aged 17 and 18, resided with him; the two younger sons resided with their mother. Gomer sent money to the mother and his children, though there is no evidence of a divorce decree.[5] *See* Appellee's Appendix (reprinting Presentence Report of February 29, 1984 at 3). One of his stated reasons for an earlier bank robbery committed in 1978 was that he "had four boys to support, and things started getting bad as for having money to live on." *See* Appellee's Appendix (reprinting Presentence Report of December 11, 1978 at 6). As for the other two wives, the only evidence of dependency in the record was Gomer's notation on his request-for-counsel form that his third wife was a dependent. We believe this evidence sufficed to discharge Gomer's burden of production and that, accordingly, the issue was properly before the district judge.

■■■ As for the possibility that the district judge implicitly considered the needs of Gomer's dependents, it is true that an explicit statement of the sentencing factors relied on is not generally required. *United States v. Harris*, 558 F.2d 366, 374 (7th Cir.1977). Nevertheless, this court has stated that it is "always advisable" to do so and has cautioned against adopting a rule "which will have the natural and probable effects of encouraging trial judges to avoid

giving reasons for sentencing decisions." *Id.* at 374–75. Accordingly, the defendant need not show explicit reliance on an *improper* sentencing factor to obtain relief: it is "sufficient to show that it was not improbable the trial judge was influenced by improper factors in imposing sentence." *Id.* at 375.

■■ We hold that a similar test applies where the defendant charges that the district judge failed to consider a mandatory sentencing factor. Although the sentencing judge need not explicitly state he is relying on the mandatory factor, the appellate court must reverse where the defendant shows either (1) that the judge explicitly repudiated the mandatory factor, or (2) that it was not improbable that the judge failed to consider the mandatory factor and was influenced thereby.

The strongest evidence that the district judge implicitly considered the needs of Gomer's dependents was the prosecutor's statement that $7,672.00 had been seized, of which $400.00 was subsequently returned to Gomer's children. TA. 8. It could be argued that the district judge implicitly concluded that this $400.00 adequately provided for the children's needs and that it was therefore equitable to award the remaining $7,272.00 to the victims.

We conclude, however, that it was not improbable that the district judge failed to consider the dependents' needs. First, a return of $400.00 to the children would not provide for the needs of Gomer's wives. Second, although the VWPA does not necessarily require full satisfaction of the de-

---

**2.** A failure to discharge this production burden might itself be plain error, though we need not reach that issue here.

**3.** On the other hand, by arguing that the money was in part the proceeds of the sale of his wife's car, Gomer alerted the district judge to the potential claims of his family members to the seized funds.

**4.** We use the word "evidence" advisedly, inasmuch as the usual strictures of the Federal Rules of Evidence do not apply in a sentencing

hearing. *See United States v. Ray*, 683 F.2d 1116, 1120 (7th Cir.), *cert. denied*, 459 U.S. 1091, 103 S.Ct. 578, 74 L.Ed.2d 938 (1982).

**5.** Indeed, the presentence report suggests that he is a bigamist, *see* Appellee's Appendix (reprinting Presentence Report of December 11, 1978 at 11). This would not affect Gomer's obligation to support the "wives" and children involved, nor would it affect the district judge's obligation to consider the needs of the various families in awarding restitution.

fendant's obligations to his dependents before awarding any sum to the victims, it does require some principled balancing between the needs of both potential classes of recipients.[6] It is improbable that the district judge would have given such short shrift to the continuing needs of Gomer's dependents. Third, the district judge's statements indicate that he did not understand that the statute required him to consider the needs of Gomer's dependents. He conceded his unfamiliarity with the VWPA: "It's a new—we haven't had much experience with the act." TA. 8. His only explanation of the VWPA was that restitution was "mandatory" unless he could state some reasons not to make the award. *See* TA. 3, 11. It is not improbable that the district judge was familiar in general terms with the tough restitution requirements of the VWPA, but was not familiar with the less-publicized restrictions on restitution detailed in 18 U.S.C. § 3580.

We also conclude that it is not improbable that the district judge's failure to consider the dependents' needs influenced his judgment. The VWPA requires some principled balancing between the needs of the victims and the needs of the dependents. *See supra* note 6 and accompanying text. It is not improbable that one such principled balance would be to reduce or even eliminate the restitution award, especially because the victims in the case at bar are insurance companies and, as such, are perhaps better able to absorb a loss than Gomer's dependents. Accordingly, we reject the United States' argument that the district judge implicitly considered this sentencing factor.

The third and final argument against finding error below is that the seized funds were in fact the proceeds of the bank robberies. If the funds were stolen, then neither Gomer nor his dependents had any claim to them, whatever their financial straits.[7] While there may have been evidence to support such a finding, the district judge did not deem it necessary to reach the issue. Instead, he advised Gomer that the funds confiscated from him could be applied toward restitution regardless of their origin. TA. 4–5. This was not completely correct. Although it is true that a restitution order could reach any of Gomer's funds regardless of their source, the origin of the funds was relevant in the sense that the district judge had to consider the needs of Gomer's dependents if he found that the funds were not the proceeds of the bank robberies. The district judge therefore erred in refusing to reach this issue.

In sum, the district court erred in not considering the needs of Gomer's dependents when awarding restitution. Nevertheless, because Gomer did not raise this issue below, we can vacate the restitution sentence and remand only if we can define the error as plain error.

To be plain error, the error must be "conspicuous" and must have "probably changed the outcome of the trial." *United States v. Silverstein*, 732 F.2d 1338, 1349 (7th Cir.1984). It is surprising that the district judge did not explicitly acknowledge a sentencing factor expressly required by statute in all cases. This, combined with ample record evidence as to

---

**6.** The Committee recognizes that an offense—particularly one causing bodily injury or death—may have lifelong cost implications for the victim or the victim's family, but it also recognizes that there may sometimes be a practical necessity in limiting both the amount of restitution ordered and the period during which restitution payments are ordered to be made. In line with the American Bar Association Criminal Justice Standard 18–2.3, the Committee's intention is that the offender's ability to pay will be a factor in the restitution order, and that the order will cover a period that will reasonably assure full and complete payment of the restitution order notwithstanding any maximum period of probation or incarceration the defendant could have served.

S.Rep. No. 532, 97th Cong., 2d Sess. 31–32, *reprinted in* 1982 U.S.Code Cong. & Ad.News 2515, 2537–38.

**7.** Conversely, if the funds belonged in whole or in part to Gomer's wife and he had no entitlement to the funds other than as a bailee, it would be inappropriate to use the wife's funds to discharge Gomer's restitution obligation.

Gomer's support of various dependents and an ultimate restitution award that reflected no balancing between the needs of victims and dependents, lead us to conclude that the error of omission is "conspicuous." The "outcome" in this case is not guilt or innocence, but the ultimate sentence. A finding that the $7,272.00 was not the proceeds of the robbery and that family members were dependent on the defendant for living expenses would reduce, or even eliminate, the restitution award. It was therefore "probable" that consideration of the omitted sentencing factor would have changed the outcome.

■ It is true that the plain error rule must be used "sparingly" and that the ultimate judgment to be reached is that the rule's application is necessary to prevent a "miscarriage of justice." *United States v. Young,* — U.S. ——, 105 S.Ct. 1038, 1047, 84 L.Ed.2d 1 (1985); *accord Silverstein,* 732 F.2d at 1349. Perhaps because sentencing errors have such a definite and immediate adverse effect on the defendant, or perhaps because it is necessary to place some checks on the enormous discretion of the sentencing judge, appellate courts have been less reluctant to invoke the plain error rule in the sentencing context. *See, e.g., Harris,* 558 F.2d at 375–77 (failure to object to errors in presentence report despite opportunity to do so held to be plain error in light of potential prejudice to defendant, notwithstanding general rule of enforcing such waivers); *United States v. Robin,* 545 F.2d 775, 779 (2d Cir.1976) ("a court's failure to take appropriate steps to ensure the fairness and accuracy of the sentencing process must be held to be plain error"). In any event, it would be a miscarriage of justice to enforce a waiver, under the guise of reinforcing the "efficien[cies]" and "premises of an adversary system," *Silverstein,* 732 F.2d at 1349, where the persons

most prejudiced by the waiver were not even represented by counsel: Gomer's dependents. And if indeed Gomer's dependents require his financial assistance, the resulting prejudice would be compelling. Given these concerns, as well as the potentially profound effect consideration of this sentencing factor may have on the restitution award, we hold such an omission to be plain error.

In sum, the district judge committed plain error in awarding restitution without considering the financial needs and earning ability of Gomer's dependents. We therefore vacate the restitution sentence. On remand, the district judge should first consider whether the seized funds were part of the proceeds of the bank robberies. If they were not, then Gomer's restitution sentence should be reconsidered in light of the financial needs and earning ability of his dependents. Because we resolve this case on statutory grounds, we need not reach the issue of the VWPA's constitutionality.[8]

COFFEY, Circuit Judge, dissenting.

The principal issue raised by Gomer in this appeal is whether the Victim and Witness Protection Act ("VWPA"), 18 U.S.C. §§ 3579 and 3580, providing restitution to victims of crime, is constitutional. The majority, for what reason I fail to understand, avoids this issue and instead holds that the district court judge erred in applying the statute, as he failed to consider the needs of the dependents of the defendant. After recognizing that the issue of the financial needs of the defendant's dependents was never raised before the district court, the majority holds that the alleged failure to consider the needs of the dependents amounts to plain error. After examining the record in this case and the provisions of 18 U.S.C. § 3580, I fail to discern, even if I

---

**8.** It is true that if the VWPA does unconstitutionally deprive Gomer of his right to jury trial, *see, e.g.,* Note, *The Unconstitutionality of the Victim and Witness Protection Act Under the Seventh Amendment,* 84 Columb.L.Rev. 1590 (1984), Gomer will suffer constitutional harm by not being allowed, on remand, a jury trial on

the restitution issue. But if the district judge declines to award any restitution, the issue will be moot and any constitutional error will have been harmless. Because resolution of the constitutional issue in this case may ultimately prove unnecessary, it would be imprudent for us to decide the issue at this stage.

were to agree with the majority that the district court failed to consider the needs of the dependents, how such error could possibly amount to plain error. According to case law as I understand it, the defendant waived his argument that the district court failed to consider the needs of his dependents when he failed to raise it in the trial court and raised it for the first time on appeal. *See, e.g., United States v. Carter,* 720 F.2d 941, 945 (7th Cir.1983); *Holleman v. Duckworth,* 700 F.2d 391, 394–95 (7th Cir.), *cert. denied,* —— U.S. ——, 104 S.Ct. 116, 78 L.Ed.2d 116 (1983). I would reach the merits of the defendant's appeal, as filed in this court, and hold that the Victim and Witness Protection Act is constitutional. I, therefore, respectfully dissent.

The majority frames the issue presented in statutory terms and asserts that no error was committed if "(1) the issue was not properly before the court, [or] (2) the judge implicitly considered this factor in ordering restitution...." After the majority notes that the defendant bears the burden of establishing the financial needs of his dependents, *see* 18 U.S.C. § 3580(d),[1] it holds, in a very circuitous manner, that the issue of the dependents' needs was before the district court. The majority reaches this conclusion relying on two phrases in different areas of the presentence report reciting that Gomer had four children and that at one time he "sent money" to them, and a self-serving, unsubstantiated statement that he had committed an earlier bank robbery in 1978 because he had to "support his four boys." Overlooking the fact that the defendant never even raised the issue of his dependents' needs, the majority relies exclusively upon these two phrases in the presentence report to hold that the issue of the dependents' needs was properly before the district court.

Admittedly, § 3580(a) requires the court to consider not only the "loss sustained by the victim" but also the financial needs and earning ability of the defendant and the "defendant's dependents." However, contrary to the majority's inaccurate statement that all there need be is "some evidence of the dependents' needs" in order for the issue to be properly before the district court, § 3580(d) explicitly establishes that if there is a dispute "as to the proper amount ... of restitution" the defendant bears the burden of establishing by a "preponderance of the evidence" the financial needs of his dependents. The statute requires that the defendant bear the burden of establishing his dependents' needs and *not just the burden of production,* as the majority seems to believe, in demonstrating the financial needs of his dependents. However, during his presentence hearing, Gomer did not even raise, much less argue, the issue of his dependents' needs and thus failed even to come close to meeting his burden of establishing the needs of his dependents as required by § 3580(d). In fact, examination of the presentence report reveals only the defendant's self-serving declaration that "he sent money" to his sons after his latest series of armed robberies (Appellee's appendix, February 29, 1984, Presentence Report at 3). The report fails to establish how much money was sent, why it was sent or if, in fact, it was ever received. Certainly, the district court judge could very logically have inferred that since Gomer never raised the issue of his dependents' needs, their needs were being met by relatives, friends or some type of government program such as AFDC. I know of no case law holding that it is incumbent upon trial judges to shed their mantle of impartiality and undertake a microscopic analysis of each and every phrase in a presentence report and raise issues that, according to the clear mandate of the statute, are to be raised by the defendant. Indeed, it is the responsibility of defense counsel to challenge the prosecution and meet each and every requirement of the statute (i.e., the defendant bears the burden of proof in "demonstrating the ... financial needs of

---

**1.** "The burden of demonstrating ... the financial needs of the ... defendant's dependents shall be on the defendant." 18 U.S.C. § 3580(d).

... the defendant's dependents....."), when representing his client before the court. "[I]t is [most definitely] not the responsibility of the prosecutor or the judge to do the work of the defense counsel ... this type of lack of preparation is not in the best interests of his client nor is it in the interests of justice." *Ruiz v. Cady,* 710 F.2d 1214, 1218 (7th Cir.1983) (explanation added). Indeed, if anything it is defense counsel's absolute failure to properly meet his burden under the statute and thus protect his client's interests that deserve comment and attention by this court.

I would hold that it was entirely proper for the district court judge to order the restitution of a mere $7,200 from Gomer, who had robbed numerous banks of approximately $260,000. Since Gomer failed to raise the issue of his dependents' needs and because the explicit language of the statute places the burden of establishing his dependents' needs on the defendant, I cannot understand how the defendant's mere accusation in his appellate brief that the district court failed to consider the needs of his dependents rises to the level of error, let alone plain error. To constitute plain error, the omission "must be conspicuous," and it must also have "probably changed the outcome of the trial [or hearing]." *United States v. Silverstein,* 732 F.2d 1338, 1349 (7th Cir.1984) (explanation added). Certainly the alleged failure of the judge in this case to consider the needs of Gomer's dependents, where the statute places the burden of proof on Gomer to establish their needs, cannot in any conceivable fashion be termed "conspicuous." The erroneous analysis employed by the majority in this case effectively re-writes the clear, explicit and unambiguous language of the statute and relieves this defendant, as well as defendants in the future, of the burden of challenging the amount of restitution determined by the court by establishing his dependents' financial needs. Further, contrary to the intent of Congress in drafting this statute, the majority improperly transfers the task of ascertaining the financial needs of dependents to the already overburdened district court judges, forcing them to address issues not properly raised, to abandon their clear obligation of impartiality, and to act as substitute defense attorneys.

"A judge best serves the administration of justice by remaining detached from the conflict between the parties. As Justice McKenna stated long ago, '[T]ribunals of the country shall not only be impartial in the controversies submitted to them but shall give assurance that they are impartial....' *Berger v. United States,* 255 U.S. 22, 35–36, 41 S.Ct. 230, 235, 65 L.Ed. 481 (1921)."

*Reserve Mining Co. v. Lord,* 529 F.2d 181, 186 (8th Cir.1976). Accordingly, I dissent from the majority's unsupported plain error analysis and would reach the merits of the constitutional challenges to the VWPA raised by Gomer.

Gomer argues that the district court violated his due process rights in misapplying the statute. As the majority notes, Gomer frames his attack as a deprivation of due process, in an obvious attempt to circumvent his waiver problem. The law is clear in this circuit that the requirements of due process during a sentencing hearing are met if the defendant is given adequate notice of the proceeding and an opportunity to contest the facts relied upon to support the imposed criminal penalty. *See Townsend v. Burke,* 334 U.S. 736, 741, 68 S.Ct. 1252, 1255, 92 L.Ed. 1690 (1948); *United States v. Hendrix,* 752 F.2d 1226, 1234 (7th Cir.1985). A thorough reading of this record establishes, beyond a doubt, that due process was satisfied as Gomer was afforded every opportunity to challenge, object to, and contest the district court's determination of restitution. *See United States v. Keith,* 754 F.2d 1388, 1392 (9th Cir.1985). It is noteworthy that the only statement made by Gomer at his hearing concerning the matter of restitution was his unsupported, self-serving and highly questionable statement that the $7,672 in cash seized from his person at the time of his arrest came from the sale of his wife's car. Gomer presented no bill of sale, no transfer or proof of title, no affidavit of

ownership or other evidence to establish this fact. In contrast, the government established that Gomer had stolen approximately $260,000 during his armed robbery crime spree across the states of Arkansas and Oklahoma. Section 3580(a) requires the court to consider not only the needs of the dependents (never raised or argued by Gomer), but also the defendant's earning ability and the loss sustained by the victims in determining the amount of restitution. From the facts recited in this record, given that Gomer was sentenced to a period of thirty-five years, and thus was without earning potential during this period of time, and that over $260,000 was stolen by Gomer, the judge's conclusion that the relatively small amount, $7,242, should be paid in restitution was more than justified.[2] Under the VWPA the imposition of restitution is a part of the sentencing process, and the general rule is that:

> "[O]nce it is determined that a sentence is within the limitations set forth in the statute ... appellate review is at an end, unless the sentencing judge relied on improper or unreliable information in exercising his or her discretion or failed to exercise any discretion at all...."

*United States v. Madison,* 689 F.2d 1300, 1312 (7th Cir.1982), *cert. denied,* 459 U.S. 1117, 103 S.Ct. 754, 74 L.Ed.2d 971 (1983); *United States v. Main,* 598 F.2d 1086, 1094 (7th Cir.1979). In this case, there is no allegation, much less any proof, that the district court relied on improper information in imposing the amount of restitution it did; thus, Gomer's argument that he was denied due process must fail as he and his attorney made absolutely no reference to his dependents' needs during the entire restitution hearing.

Gomer also raises two facial challenges to the VWPA: (1) he argues that the award of restitution is essentially a civil judgment and thus the hearing before the district court violates the Seventh Amendment since it deprives him of his right to a jury trial; and (2) he argues that the VWPA violates the Fifth Amendment of the United States Constitution since it deprives the defendant of due process and is impermissibly vague. Gomer's broad attack on the VWPA essentially adopts the unsupportable position of an Alabama district court decision that found the Act unconstitutional. *See United States v. Welden,* 568 F.Supp. 516 (N.D.Ala.1983). However, the *Welden* decision has been widely criticized by the four circuit courts that have, to date, addressed the constitutionality of the VWPA, *see United States v. Keith,* 754 F.2d 1388 (9th Cir.1985); *United States v. Brown,* 744 F.2d 905 (2d Cir.1984); *United States v. Florence,* 741 F.2d 1066 (8th Cir. 1984); *see also United States v. Ciambrone,* 602 F.Supp. 563 (S.D.N.Y. Dec. 5, 1984), and was recently overturned by the Eleventh Circuit Court of Appeals in *United States v. Satterfield,* 743 F.2d 827 (11th Cir.1984).

Gomer points in particular to two provisions in the VWPA, §§ 3579(h) and 3580(e), and argues that these two sections convert the restitution order into a civil judgment thereby violating his Seventh Amendment right to a jury trial on the issue of liability. Specifically, § 3579(h) provides that an award of restitution can be enforced in the same manner as a judgment in a civil action and § 3580(e) states that a conviction for an offense estops the defendant from denying, in a subsequent civil proceeding, the essential facts supporting the underlying offense.

Gomer's argument that the VWPA violates the Seventh Amendment is without merit since the legislative history of the VWPA clearly enunciates that the provision for restitution was written into the Act and adopted by Congress as part of the criminal sentencing procedure and was not

---

**2.** The $260,000 taken by Gomer through force or threat of force certainly appears to be a sufficient amount to support his dependents if, in fact, Gomer, rather than his wife, relatives, friends, or a government program, actually supported the dependents. Further, as the majority correctly notes, if the government could prove that the amount seized from Gomer came from the bank robberies, then the balancing of needs required by sections 3580(a) and (d) would not even be necessary.

intended as a civil remedy. Indeed, one of the primary purposes in enacting the VWPA was to improve the lot of victims and restore them to as whole a position as possible, a problem far too often ignored in the past by the criminal justice system. S.Rep. No. 532, 97th Cong. 2nd Sess. 10, *reprinted in* 1982 U.S.Code Cong. & Ad. News 2515, 2516. The question of whether a statutorily defined penalty should be considered civil or criminal is a matter of legislative intent. *United States v. Ward,* 448 U.S. 242, 248, 100 S.Ct. 2636, 2641, 65 L.Ed.2d 742 (1980). The VWPA's legislative history demonstrates that Congress specifically intended that the provision for restitution contained in the VWPA was to be considered as part of the sentencing procedure. *See Satterfield,* 743 F.2d at 837 (" 'restitution would become a sentence that could, in and of itself, be imposed.... This legislation does not intend that restitution become a substitute for civil damages....' " 128 Cong.Rec.H. 8467 (Daily ed. Oct. 1, 1982) (statement of Representative McCollum)); *see also Brown,* 744 F.2d at 909–10. Further, while § 3580(e) does bar the defendant from denying liability for his/her actions in subsequent federal civil litigation, this section does not bar subsequent challenges to the facts supporting the dollar amount of the restitution award itself. Rather, § 3580(e) merely codifies "the rule [existing in most federal jurisdictions] that a criminal conviction may be used as conclusive proof of some issues in a subsequent civil litigation." (explanation added). *Satterfield,* 743 F.2d at 838; *see also Brown,* 744 F.2d at 910.

Gomer also unleashes a broad, buckshot attack on the VWPA's alleged due process shortcomings. Gomer quotes extensively in his brief from the frequently criticized and recently overturned opinion of the Alabama district court in *Welden,* listing 41 questions arising from the language of the Act affecting the due process rights of the defendant. *See Welden,* 568 F.Supp. at 527–30. The Due Process Clause of the Fifth Amendment does apply to the sentencing stage of the criminal trial. *See Gardner v. Florida,* 430 U.S. 349, 358, 97 S.Ct. 1197, 1204, 51 L.Ed.2d 393 (1977) (plurality opinion). The defendant must be given, as was done in this case, adequate notice of the proceedings and an opportunity to contest facts relied on by the judge in his sentencing decision. *See Townsend,* 334 U.S. at 741, 68 S.Ct. at 1255. However, the degree of due process protection required in a sentencing hearing is that which assures that enough information is provided to the district court judge to enable him to exercise discretion in an enlightened manner. *See, e.g., United States v. Stephens,* 699 F.2d 534, 537 (11th Cir. 1983).

From my reading of the statutes and the numerous decisions that have ruled upon the same, there are more than sufficient due process protections contained within sections 3579 and 3580 of the VWPA and within Fed.R.Crim.P. Rule 32(a) and (c)—the rule governing the conduct of the sentencing hearing—to allow the sentencing judge to gather sufficient information in his exercise of his sentencing discretion and thus to foreclose a facial challenge to the statute's constitutionality. *See Satterfield,* 743 F.2d at 840. For instance, § 3580(a) promulgates factors that the judge should consider in deciding the amount, if any, of the restitution award while § 3580(d) allocates to the parties their burdens of proof if they wish to dispute the amount of the restitution award. Further, Rule 32(c)(3)(A) of the Fed.R. Crim.P. gives the defendant the right to comment upon and challenge each and every bit of information contained in the presentence report presented to aid in his determination in reaching his restitution decision. In addition, Rule 32(c)(3)(D) requires the judge to make factual findings *if* the defendant challenges the accuracy of any information contained in the presentence report. Finally, the guidelines provided by the VWPA, when read in conjunction with Fed.R.Crim.P. 32, are far more extensive and specific than the guidelines provided for in the Probation Act, 18 U.S.C. § 3651, which simply provides in part that as a condition of probation, the defendant

"[m]ay be required to make restitution or reparation to aggrieved parties for actual damages or loss caused by the offense for which conviction was had." The words expressed by our court in *United States v. Baker,* 429 F.2d 1344, 1347 (7th Cir.1970), in upholding the constitutionality of the Probation Act are equally applicable here:

"The validity of delegations of discretionary powers does not rest merely upon the enumeration of precise standards or specific guiding factors.... [T]he Court [has] noted that the necessary power to delegate sufficient authority to effectuate congressional purposes may demand the grant of broad discretions to administrative agencies:

'It is not necessary that Congress supply administrative officials with a specific formula for their guidance in a field where flexibility and the adaptation of the congressional policy to infinitely variable conditions constitutes the essence of the program. "If Congress shall lay down by legislative act an intelligible principle * * * such legislative action is not a forbidden delegation of legislative power...." Standards prescribed by Congress are to be read in light of the conditions to which they are to be applied. "They derive much meaningful content from the purpose of the Act, its factual background and the statutory context in which they appear." *American Power & Light Co. v. S.E.C.,* 329 U.S. 90, 104, 67 S.Ct. 133, [142] 91 L.Ed. 103 [1946].'

"Even greater latitude must be recognized where Congress grants broad discretionary powers to courts, for the constitutional and functional role of courts necessarily requires the frequent application of judgment in the exercise of discretion."

Since section 3580(d) explicitly mandates that the burden of proof in establishing the needs of the dependents is upon the criminal defendant and because Gomer failed to challenge, raise, much less argue, the alleged needs of his dependents before the district court, I fail to see how the district court committed error, let alone plain error in allegedly failing to consider the defendant's needs. Contrary to the explicit intent of Congress expressed in § 3580(d), the majority's erroneous analysis completely rewrites the VWPA statute and relieves the defendant in this case and defendants in all future cases of their burden of establishing the needs of their dependents. Because Gomer never raised the issue of his dependents' needs, the issue was never properly before the court. Thus, I would reach the very merits of Gomer's appeal and hold that the VWPA statute does not violate the Seventh Amendment or the Due Process Clause of the Fifth Amendment and that the application of the statute in this case was constitutionally antiseptic and proper.