**UNITED STATES of America,**

v.

**Annie Lou HARRIS.**

**Crim. A. No. 87–AR–113–NE.**

United States District Court,
N.D. Alabama,
Northeastern Division.

March 9, 1988.

---

Frank W. Donaldson, U.S. Atty., James E. Phillips, Asst. U.S. Atty., for U.S.

Michael Fliegel, Birmingham, Ala., for defendant.

## MEMORANDUM OPINION

ACKER, District Judge.

On June 30, 1987, this court accepted a plea of guilty from Annie Lou Harris to fourteen counts of an indictment charging her with mail fraud and swindling. In consideration of this guilty plea, the United States Attorney recommended to the court a sentence of three years on each count, to run concurrently, the execution of the sentence to be suspended and Mrs. Harris to be placed on probation subject to the general terms and conditions of probation of record in this court and subject to the special condition that she make restitution to Blue Cross and Blue Shield of Alabama (Blue Cross) under the Victim and Witness Protection Act (VWPA), 18 U.S.C. §§ 3579, *et seq.*, in the sum of $28,521.78. The United States Attorney and Blue Cross represented to the court during the sentencing hearing that $28,521.78 is the amount which Mrs. Harris had stolen from Blue Cross by the device of submitting false claims under a medical benefits plan to which Mrs. Harris' husband belonged, and under which Mrs. Harris was covered. This restitution judgment in favor of Blue Cross was to be paid at the rate of $350.00 per month for six months, after which the entire balance would be due. This restitution obligation was an expressly understood condition of probation. Mrs. Harris represented to the court, to the United States Attorney, and to Mr. Louderback, a representative of Blue Cross who was in court during the sentencing hearing, that she owned certain Alabama real property which she would promptly place on the market and which could and would be sold within six months for enough money, after paying a small first mortgage balance, to pay the restitution judgment. After hearing this recommendation by the United States Attorney, after hearing from Mrs. Harris and her counsel, and after hearing from Mr. Louderback, the court adopted the "bargained for" recommendation and imposed the recommended sentence precisely as outlined.

Prior to the sentencing hearing, Blue Cross had received this court's standard VWPA notice.[1] Blue Cross chose not to file a petition for intervention and apparently relied instead upon its Mr. Louderback, a non-lawyer, upon the United States Attorney and upon this court. As will hereinafter appear, these reliances were misplaced. In turn, the court itself leaned on several slender reeds. Not necessarily in the order of their importance, these slender reeds were (1) the probation officer; (2) Blue Cross; (3) the United States Attorney; (4) Local 498 of the Plumbers and Steamfitters Union; (5) counsel for Mrs. Harris; (6) Mrs. Harris herself; and (7) the VWPA.

Nothing that this court is about to say is intended as a reflection upon or as a criticism of the United States Attorney. It is intended as a reflection upon and a criticism of the system under which the United States Attorney is forced by the VWPA into an automatic conflict of interest. No attorney can divide his loyalty. Yet, under VWPA the United States Attorney is commanded to divide his loyalty between the United States, which is his regular client, and the victim of a particular crime, who is a person or entity whose interests are quite often at odds with the interests of the United States in the context of a criminal prosecution.

As perhaps should have been predicted on June 30, 1987, the six months' restitution period provided in the sentencing judgment elapsed, and Mrs. Harris, except for four payments of $350.00 each, failed to pay the restitution judgment to Blue Cross. In turn, Blue Cross alerted Mrs. Harris' probation officer, who then dutifully petitioned this court "for a hearing to determine if probation should be revoked." The court set such a hearing on February 24, 1988, and Mrs. Harris appeared with her court-appointed counsel to attempt to show cause why her probation should not be revoked. Mr. Louderback, the lay representative of Blue Cross, was also present, waiting to see if the United States Attorney could successfully prevail on this court to turn the prison system into a debtor's prison, or, in the alternative, to scare approximately $28,000.00 out of Mrs. Harris.

At the probation revocation hearing, the following facts surfaced:

1. Neither Blue Cross nor the United States Attorney ever obtained a certificate of judgment from the Clerk for recordation in the Probate Court of Talladega County, Alabama, where Mrs. Harris' real property is located, so as to constitute a lien on the property under Alabama law and to prevent Mrs. Harris from selling it to a *bona fide* purchaser and from spending the money on a one-way ticket to Rio. Fortunately for all concerned, this lack of sophistication caused no permanent damage.

2. The realtor with whom Mrs. Harris listed her real property after June 30, 1987, wrote Mrs. Harris a letter on November 9, 1987. She gave this letter to her probation officer. It was received into evidence on February 24, 1988. The letter informed Mrs. Harris that in the realtor's opinion Mrs. Harris' real property has a market value of $5,000.00 or less. If the mortgage balance is approximately $1,500.00, as Mrs. Harris says, this would leave an "equity" in Mrs. Harris of only $3,500.00. Mrs. Harris now says her property is worth more than her realtor thinks it is. It goes without saying either that Mrs. Harris lied

---

**1.   NOTICE TO PURPORTED VICTIM**

You are hereby notified, pursuant to the Victim and Witness Protection Act of 1982, that you will have no right to appeal from any order denying you restitution *unless* you file a petition for leave to intervene in the above-entitled cause and are granted such leave for the purpose of protecting your right to be heard under the Victim and Witness Protection Act of 1982, 18 U.S.C. §§ 3579 *et seq.* Attached hereto is a copy of the opinion rendered by the Court of Appeals for the Eleventh Circuit on June 17, 1986, styled *United States of America v. J.C. Franklin v. Earle*

*T. Myers,* 792 F.2d 998 (11th Cir.1986). It may provide you some assistance. You may wish to consult a private attorney on this matter because under some circumstances, which cannot always be anticipated, the United States Attorney may find himself in a conflict of interest. The consent docket in this case is scheduled on _____. If a plea of guilty is not entered, the trial is scheduled for _____. Restitution issues will not be decided until sentencing if guilt is adjudicated.
[The Eleventh Circuit opinion in *Myers* is omitted.]

to the United States Attorney, to Blue Cross, and to the court during her sentencing hearing on June 30, 1987, or that under the pressure of the moment she had delusions of grandeur about her property. Wishful thinking is often induced by the thought of imprisonment. This court gives Mrs. Harris the benefit of the doubt.

3. Subsequent to June 30, 1987, Mrs. Harris, who according to her pre-sentence report has a serious heart condition and other real physical ailments which result in regular and sizeable medical expenses, has incurred and paid for medical services and prescription drugs of the kind and character which Blue Cross had routinely honored prior to the indictment. At the revocation hearing, Mrs. Harris testified, without contradiction, that her said post-conviction medical bills aggregate approximately $8,000.00 and that her probation officer told her that Blue Cross, instead of reimbursing her for these medical expenses, would *credit* its restitution judgment for those expenses and would reduce accordingly the amount of her restitution obligation. This "arrangement," if made, was never communicated to the court until the revocation hearing. It was not contradicted by the probation officer who was in court, but Mr. Louderback, the Blue Cross representative, from the back of the courtroom, denied the existence of any such "arrangement" and instead informed the court that Mrs. Harris' medical insurance had been cancelled after her conviction. Mrs. Harris' husband, who was also in the courtroom, attempted to ask how his insurance could be cancelled when he had paid the premiums through his Union, Local 498 of the Plumbers and Steamfitters, but the court stopped him, whereupon Mr. Louderback said:

> I told Mr. Raley that it was his decision to do this. This is the administrator of the Plumbers & Steamfitters. I said, "This is your decision to do this because I have no right to do this." He gave me, told me, "Yes, I want to cancel that contract. I will not pay any more claims on those people," because he said they stole $28,000.00 from his benefits fund

and until he got his $28,000.00 back he was not going to pay any of their bills.

From this statement, it quickly appeared to the court that Blue Cross was never a "victim" in the case. Instead, it appeared for the first time that Blue Cross only administers or manages the insurance benefits program for Local 498, and that Local 498 itself *funds* the program. Local 498 was the entity which lost this particular $28,000.00. On and prior to June 30, 1987, Blue Cross was erroneously described by the United States Attorney, and by the probation officer in the pre-sentence report, as the "victim." Blue Cross was and is nothing but a conduit or agent. Who actually received the $350.00 per month paid by Mrs. Harris for four months pursuant to the judgment of June 30, 1987, was not reflected in the evidence at the revocation hearing, and the court forgot to ask.

4. It is possible that Mrs. Harris now has a sizeable set-off against the "victim" of her crime, that is, if the "victim" is some entity that is contractually obligated to pay Mrs. Harris' legitimate medical expenses accruing after her indictment.

5. It is also possible that Mrs. Harris has a cause of action under Alabama tort law and/or an ERISA claim against Blue Cross and/or against Local 498 for wrongful refusal to pay a lawful insurance claim or to credit her for covered medical expenses when her husband, a member of Local 498, is, for aught appearing, a member in good standing and has not been charged with or convicted of stealing anything from Local 498 or from Blue Cross.

## CONCLUSIONS

The court is tempted "to throw up its hands." But, under its oath, the court cannot avoid at least trying to make some sense out of this unique, unanticipated situation. Although Mrs. Harris has clearly violated the express terms of her probationary sentence, this court believes that the plea-bargained restitution provisions were based on erroneous factual assumptions and may be vulnerable under the standard enunciated by the Ninth Circuit on February 5, 1988, in *United States v.*

*Whitney,* (9th Cir.1988) (to be published at 838 F.2d 404). In an exercise of its supervisory and continuing jurisdiction to correct erroneous sentences, this court cannot revoke Mrs. Harris' probation and send her to prison. Instead, the court must recognize the true state of facts. Blue Cross is acting, and has been acting, only as a collection agent for Local 498. In turn, Blue Cross, as a collection agent for an undisclosed principal, obtained by unhappy accident the legal assistance of the United States and of this court.

When this court wrote its short-lived opinion in *United States v. Welden,* 568 F.Supp. 516 (N.D.Ala.1983) *aff'd in part, rev'd in part sub nom United States v. Satterfield,* 743 F.2d 827 (11th Cir.1984), *cert. denied,* 471 U.S. 1117, 105 S.Ct. 2362, 86 L.Ed.2d 262 (1985), in which this court temporarily held the VWPA to be unconstitutional, this court thought that it had articulated most of the Act's shortcomings, and had predicted most of the dire consequences which would result if courts are required to apply the Act in actual practice. This court received support at Note, *The Unconstitutionality of the Victim and Witness Protection Act Under the Seventh Amendment,* 84 Columbia Law Review 1590 (1984), but not in the appellate courts. The Supreme Court has not spoken. The court failed to anticipate the bizarre set of procedural facts and actual facts in Mrs. Harris' case. Mrs. Harris' case only serves to illustrate the irrefutable fact that the VWPA is being applied, as a matter of necessity, on an uneven, *ad hoc* basis, if being applied at all. The rule announced by the Eleventh Circuit in *United States v. Franklin,* 792 F.2d 998 (11th Cir.1986) (referred to in this court's routine notice to victims), is that the victim restitution portion of any sentence is invulnerable to appellate review, as a practical matter, and thus is enforceable only to the extent of a trial judge's disposition to enforce it. *See United States v. Allison,* 599 F.Supp. 958 (N.D.Ala.1985). The new Sentencing Guidelines, assuming that they are constitutional, do not materially change the trial judge's obligations under the VWPA. Ironically, the Sentencing Guidelines were designed to eliminate disparity in sentencing, but they do nothing about the appalling disparity in restitution handling and results as between judges.

The Supreme Court in *Morrissey v. Brewer,* 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), pointed out that the choice of sanctions for a probationer's violation is often more complex and difficult than the proof of the violation. The contemplation of sanctions becomes even more complex when the violation is determined to be unintentional and unavoidable. In an exercise of this court's discretion, this court finds that Mrs. Harris has made a reasonable effort, considering her physical condition and financial resources, to meet the obligations of her erroneous probationary sentence, and that her probation should not be revoked. Because Local 498 of the Plumbers and Steamfitters is in privity with Blue Cross it should be bound by any amendment to the sentence. That amendment, which will be entered by separate order, will substitute Local 498 for Blue Cross as the restitution judgment creditor under the VWPA and will reduce the amount of Mrs. Harris' total restitution obligation to those sums previously paid by her to Blue Cross, plus the execution by her and delivery to Local 498, or its designee, of a warranty deed, in form approved by the court, conveying her real property in Talladega County subject only to the first existing mortgage. Upon execution and delivery of the said deed, Mrs. Harris shall be relieved from any further VWPA obligation. If, however, Local 498 indicates in writing its preference for a $5,000.00 restitution balance, to be paid when and if Mrs. Harris can pay it, the deed shall not be executed. Furthermore, neither Local 498 nor Blue Cross shall be obligated to reimburse or to pay for any of Mrs. Harris' medical bills incurred up to and including February 24, 1988.

A separate order will be entered.